VOL. 91]     JANUARY TERM, 1912.          493

Burkley v. City of Omaha.     Fitzgerald v. Union Stock Yards Co.

FRANCIS J. BURKLEY, APPELLANT, V. CITY OF OMAHA,
APPELLEE.

FILED MAY 29, 1912.   No. 16,702.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE.   *Affirmed.*

*T. J. Mahoney* and *J. A. C. Kennedy,* for appellant.

*John A. Rine, W. C. Lambert* and *Clinton Brome,*
contra.

REESE, C. J.

---

MAYME FITZGERALD, ADMINISTRATRIX, APPELLEE, V. UNION
STOCK YARDS COMPANY, APPELLANT.

FILED MAY 29, 1912.   No. 17,497.

1. **Appeal:** SECOND APPEAL: LAW OF THE CASE. The decision on a
former appeal of the same case upon the question of the right
of the plaintiff to maintain the action becomes the law of the
case upon that subject, and will not be further considered.

2. **Death:** ACTION FOR DEATH: INSTRUCTIONS. Under the facts ad-
mitted and proved, it was established that the decedent was killed
while in the line of his employment and duty as a railroad
brakeman, and without negligence on his part. It was not error,
therefore, for the court to instruct the jury that the decedent
was killed without negligence on his part while he was acting
under the direction of those in charge of the engine and cars

where he was working. Under the issues and evidence in the particular case, the instruction was devoid of prejudice.

3. ——: ——: NEGLIGENCE: QUESTION FOR JURY. The decedent was killed while making a coupling of an engine to a train of cars standing upon a railroad track. If the train of cars was unmolested, as he had a right to expect, he was working in a safe place and was guilty of no negligence in working there. There was evidence tending to show that a train standing upon a track, with an engine in front, was, under the customs and rules of railroading, a signal or warning that the train was "a live train" and should not be molested or other cars coupled on to it, unless so directed by the crew in charge of the standing train. This was a question of fact to be solved by the jury. If such rule did exist, the butting of a train of many cars against such train for the purpose of coupling onto it, without the consent from the crew of the standing train, would be an act of negligence.

4. Remittitur. Under the evidence, as referred to in the opinion, the judgment of the district court for $4,000 is held to be excessive, plaintiff having already received $4,400, and a remittitur of $300 is required, upon failure of which the judgment is reversed. If the remittitur is filed, the judgment for $3,700 will be affirmed.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed on condition.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*Smyth, Smith & Schall, contra.*

REESE, C. J.

This action was instituted in the district court for Douglas county. There have been two trials. On the first trial the court instructed the jury to return a verdict in favor of defendant, which was done and the cause was dismissed. From that judgment plaintiff appealed to this court, and upon a hearing here the judgment was reversed and the cause remanded for further proceedings. The case is reported in 89 Neb. 393. The facts as to the accident which caused the death of Martin Fitzgerald, and

for whose death the action was brought, are sufficiently stated in that opinion and need not be repeated here. Upon the second trial the jury returned a verdict in favor of plaintiff for the sum of $8,100. On the hearing of the motion for a new trial the court required a remittitur of $4,100 from the amount of the verdict, or that upon failure to so remit by plaintiff a new trial would be granted. Plaintiff filed the remittitur, and judgment was rendered for $4,000. Defendant appeals.

The question of plaintiff's right to maintain this action, unaffected by the settlement with the Chicago, Burlington & Quincy Railroad Company and the receipt of the fruits of that adjustment, was adjudicated in the former appeal, and the decision thereon has become the law of the case and must be considered settled. The subject will not be re-examined.

There was no eye-witness to the death of decedent. Others were present immediately thereafter—perhaps within a few minutes, or possibly seconds—and removed the body from the track between the cars. Death must have been instantaneous, as the head was crushed and the brain forced therefrom. The indications are that the arrival of the first person upon the scene must have been within a few seconds after the accident. The Burlington engine was standing at the north end of the string of cars to which it had been or was to be attached. It is not shown that any member of that crew, except decedent, was present, and he was not in sight of defendant's crew, he being between the front car and the Burlington engine adjusting a chain coupling; the coupling of that car having been broken and disabled. He was evidently in the discharge of his duty to his employer, and, if the cars were unmolested, in a safe place. At that moment a train of cars, being pushed by an engine of defendant, and which was in charge of a crew, was sent against the rear of the string or train of cars, of which the disabled car formed a part, with such force as to drive that car against the engine, thus crushing and instantly killing decedent.

It is urged that the fact of his position between the disabled car and the Burlington engine establishes the defense of contributory negligence on his part. Upon this part of the case, while the testimony of witnesses was conflicting, there was evidence sufficient to support a finding that, where a train is standing upon a track, with a locomotive in front of it, this is equivalent to a "flag" or warning to those in charge of other cars not to couple on or in any way molest the train or cars without the consent of the crew in charge of such train; that the engine being or standing in front renders it what is termed "a live train," and which must not be molested. If this were true, and of that the jury were the sole judges, the decedent was justified in believing that the train would not be molested and he could safely enter the space between the car and engine and make the chain coupling, and therefore he would not be guilty of contributory negligence. If by the same evidence the jury were satisfied that such a rule did exist, and the crew of defendant's train saw the engine in front, did not receive any signal authorizing them to couple onto the cars, but negligently drove their train, consisting of a long string of cars, against the standing train in violation of such rules, and thereby the decedent was killed in the discharge of his duty, this would support a finding of negligence on their part. This question was also for the consideration and determination of the jury, and with their finding, under the circumstances, we cannot interfere. There is no evidence of contributory negligence on the part of decedent, and there is sufficient to sustain the finding of the want of care on the part of defendant.

In the first instruction given to the jury, in which the issues presented by the pleadings were stated, the court used this language: "Martin Fitzgerald, you are instructed, came to his death in October, 1907, as the result of a train of cars under the control of defendant's servants being intentionally propelled against another number of cars that were in close proximity and on the same

track with an engine under the control of the servants of another. The deceased was killed by the impact and without any negligence on his part, while he was in the act of fastening the forward one of the cars to the engine with a chain, under the direction of those in charge of the engine and cars where he was working." This part of the instruction is strenuously objected to upon the ground that it took the question of contributory negligence from the jury. While it is true that all questions of fact at issue in the pleadings and evidence are for solution by the trial jury, yet, where there is nothing in either which would sustain any other finding than that contained in the instruction, there could be no possible prejudice in giving it. As we have hereinbefore said, there was no proof of contributory negligence on the part of the decedent, nor were there any facts proved from which such negligence could be inferred. The further language in the instruction that the accident occurred while the decedent was in the act of coupling the cars "with a chain, under the direction of those in charge of the engine and cars where he was working," is also objected to. We are unable to see that the objection is meritorious. The proof clearly shows that decedent was acting within the line of his employment. It is alleged in the answer that "when the switching crew of said railroad company, of which deceased was a member, approached the north end of said string of cars which they were about to remove from the transfer track No. 1, they discovered that the drawbar was out of the car on the north end of said string of cars and that said train could not be moved until a chain was attached to said car," and that after said chain was attached the decedent went between the cars for the purpose of coupling or assisting in making the coupling, and, while "so engaged in the attempt to make said coupling, said north end was, by reason of another train operated by the defendant herein coming against the south end of said string of cars, driven against the said engine, and the said decedent was caught and crushed between said car

and engine, causing his instant death; that while decedent was working on said car the railroad company negligently and carelessly failed to display, or cause to be displayed, any signal or flag for the purpose of notifying or informing other crews operating in said yard not to disturb the train upon which the said Fitzgerald was working." If, under the state of facts disclosed, there was any question as to by what direction or authority the decedent was engaged in seeking to couple the cars, these averments by defendant would remove all doubt. The language used in the instruction could prejudice no one.

The next, last and most perplexing contention presented by this record is that the damages awarded by the judgment of the district court are excessive. As is shown by the former decision in this cause, the railroad company paid to the parents of the decedent, during the lifetime of his mother, the sum of $4,400. It is also shown by this record that the relief department of that company paid her the sum of $2,200. This latter sum was in the nature of an insurance for which decedent had paid, and we do not think it should be here considered. But the $4,400 paid as damages is entitled to consideration. Before the trial from which this appeal is taken, the mother of the decedent died, leaving the father and some minor children surviving her, but none of the children are of tender years, the youngest being 15 years of age at the time of the trial. The father was 53 years of age, in bad health, and yielding little for the support of the family. The decedent appears to have been a bright, competent, well-educated young man, and by his efforts the family were, to a great extent, supported. There is some conflict as to what his earnings from his employers were, but enough is shown to make it appear that the members of the family remaining at home were practically supported by him. Complaint is made that the proof of the bad health of the father is not sufficient. That he failed to contribute to the support of the family to any great extent is clearly established, as well as the fact that he is without property.

The daughter, who is the administratrix *de bonis non* of decedent's estate, was asked as to the condition of her father's health, and her answer was: "My father has not been well for the last 20 years." She was then asked as to the present condition of his health, and she answered: "He is not well." On cross-examination she was not asked anything as to the health of her father, the inquiry being confined to what he had contributed, or failed to contribute, to the family. The way was open for further inquiry into his condition, but no questions were asked. So we are required to accept it as fact that he is not well and has not been for 20 years. As we have seen, the verdict of the jury was for $8,100. The amount paid by the railroad company was $4,400. The court required a remittitur of $4,100 from the verdict, leaving a judgment for $4,000. We can hardly presume that it was the intention of the jury to find that the damages were $8,100 plus the $4,400 received from the railroad company, which would equal $12,500 to be received by the estate, when we consider the number, ages and ability of the surviving members of the family. The $4,400 added to the sum of $3,700 would equal the amount of the verdict. From these considerations we are led to believe that it was the purpose of the jury to find the whole damage was the sum of $8,100.

The judgment of the district court will therefore be reversed and the cause remanded for further proceedings unless the plaintiff within 50 days enter in this court a remittitur of $300. If such remittitur is filed, the judgment of the district court will be affirmed for $3,700. The costs of this appeal to be taxed to plaintiff, all other costs to be taxed to defendant.

AFFIRMED.