MARY FITZGERALD, ADMINISTRATRIX, APPELLANT, V. UNION STOCK YARDS COMPANY, APPELLEE.

FILED MAY 23, 1911.    No. 16,360.

1. Judgment: SATISFACTION: JOINT WRONGDOERS. Several actions may be brought and several judgments recovered against several wrongdoers, although but one satisfaction can he had.

2. Torts: SETTLEMENT: JOINT TORT-FEASORS: RELEASE. If one of several joint wrongdoers makes full payment of damages caused by injury done, there can be no further recovery for the same injury.

3. ———: ———: ———: ———. If one of several joint wrongdoers makes settlement with the injured party and pays him damages which he agrees to receive and does receive as full compensation for all damages sustained, it will release all of the joint wrongdoers.

4. ———: ———: ———: ———. Settlement with one of several joint wrongdoers and payment of damages is not a defense to an

action against another, unless it was agreed between the parties to the settlement that such payment was in full of all damages suffered. If the settlement is in writing, oral evidence is competent to show the intention of the parties thereto in an action against one not a party to the settlement; affixing a private seal to such writing is without effect.

5. Trial: DIRECTING VERDICT. If the evidence is substantially conflicting upon a material issue, it presents a question for the jury. Evidence in this case is found to be insufficient to justify the court in directing the verdict.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed.*

*Smyth, Smith & Schall,* for appellant.

*Greene, Breckenridge & Matters, contra.*

SEDGWICK, J.

Martin Fitzgerald, a young man about 23 years of age, was in the employ of the Chicago, Burlington & Quincy Railroad Company as a switchman in the yards at South Omaha. Because of a defect in one of the cars of the company, it was necessary to use a chain in coupling it with the tender of the engine, and Fitzgerald was directed by the foreman to go between the car and the tender for that purpose. While he was so employed, the defendant company drove a train of cars against the train on which he was working, which forced the car and locomotive together and instantly killed him. His mother, the plaintiff, as administratrix of his estate, brought this action against the defendant for damages caused by his death. The defendant denied that it was negligent, and alleged that this plaintiff and the father of the deceased had brought an action against the Chicago, Burlington & Quincy Railroad Company upon the same cause of action, and that the negligence of the defendant in that action was the cause of the injury complained of, and that the same parties also brought an action against the same railroad company as beneficiaries of the relief department of that company, and

that afterwards both of the said actions were settled, and that the railroad company paid the plaintiff $4,400 in full settlement of the damages caused by the death of the said Fitzgerald, and $2,200 in full settlement of the benefits to which they were entitled from the relief fund. Upon the conclusion of the evidence, the court instructed the jury to find a verdict for the defendant. The plaintiff has appealed.

The parties agree that there are three principal questions to be determined in the case: 1. Were the defendant and the railroad company jointly liable for the death of the deceased; that is, were they joint tort-feasors? 2. If they were joint tort-feasors, could the plaintiff settle with and release one of them without releasing the other? 3. If the plaintiff could settle with and release the railroad company from liability, and at the same time reserve its right of action against this defendant, is the testimony in the case sufficient to establish that it was the intention and agreement of the parties to settle with and release only the railroad company and reserve a right of action against this defendant? It was also contended by the defendant that in any event the evidence was not sufficient to show that this defendant was negligent, and that that negligence was the proximate cause of the injury complained of.

Upon the first question there is some controversy in the evidence, and we do not find it necessary to discuss this evidence in view of our conclusion upon the second proposition. If both parties are liable for the same injury, they are jointly and severally liable; that is, for the purposes of the case, they are joint tort-feasors. It is conceded in the pleading and briefs that the railroad company was liable. If this defendant was not guilty of negligence which was the proximate cause of the death of young Fitzgerald, then that of itself is a sufficient defense in this action.

If it is conceded that the railroad company and this defendant were joint tort-feasors, would the settlement with the railroad company operate as a release of this defend-

ant? While the action of Mr. and Mrs. Fitzgerald, as the parents of the deceased, was pending against the railroad company, they compromised with the railroad company by an agreement in writing, called a receipt and contract of settlement and release, as follows:

"Burlington Route. Feb., 1908. Audit Number, 253. Department Number F. B. T. 1468. Chicago, Burlington & Quincy Railroad Company, Lines West of the Missouri River. 2-29-08.

"To Mary Fitzgerald, as administratrix of the estate of Martin J. Fitzgerald, deceased, Edward A. Fitzgerald and Mary Fitzgerald, father and mother of said deceased. South Omaha, Nebraska. Paid Voucher. This is to certify that I, Mary Fitzgerald, as administratrix of the estate of Martin J. Fitzgerald, deceased, have this day received from the treasury of the Chicago, Burlington & Quincy Railroad Company, the sum of forty-four hundred ($4,400) dollars. And this is to certify that we, Edward A. Fitzgerald and Mary Fitzgerald, father and mother of said deceased, have this day received from the relief fund of the relief department of said company draft No. 30,984, for twenty-one hundred ($2,100) dollars, same being amount of death benefit due us as beneficiaries of said deceased. And in consideration of the above payments, we, Mary Fitzgerald, as such administratrix, and Edward A. Fitzgerald and Mary Fitzgerald, as such father and mother, hereby acknowledge full payment, settlement, release and satisfaction and discharge of all claims and demands of any nature whatsover, which we, or either of us, as such administratrix or as such parents, may have or claim to have either against the Chicago, Burlington & Quincy Railroad Company or its said relief department, or both of them, arising from, growing out of or to grow out of the death of Martin J. Fitzgerald aforesaid, from injuries inflicted upon his person by reason of his being struck, run over and crushed by switching train in yards at South Omaha, Nebraska, on or about October 15th, 1907. Member R. D. Draft No. 1187. Claim No. F. D.

50, Neb. Approved: B. F. Thomas. Approved: James E. Kelby. Approved: H. D. Foster, Asst. Auditor."

"Contract of Settlement and Release. Whereas, I have agreed upon a settlement of all claims against the Chicago, Burlington & Quincy Railway Company arising from the circumstances set out in the foregoing memorandum, which is made a part of this agreement, and in said settlement have included all damages sustained by me, those not yet ascertained or developed, if any there shall be, as well as those now known, and also have included and settled all other causes of action at this date existing in my behalf against said company, whether arising upon contract or tort, and whether like or unlike the demand specifically referred to above: Now, in consideration of the payment to me of forty-four hundred dollars ($4,400) hereby acknowledged and declared to be the full and only consideration moving to me, the receipt of which is hereby acknowledged, I do hereby release and forever discharge the Chicago, Burlington & Quincy R. R. Company, its lessors, lessees and controlled companies, and its and their officers, employees, relief department, successors and assigns, of and from all debts, suits, causes of action, claims and demands whatsoever, at law or in equity, which I now have, or to which I may hereafter become entitled on account of the circumstances above set out including damages not yet ascertained or developed, if any there shall be, as well as those now known, and also of and from all or any other causes or things to this date, whether like or unlike the premises, and whether arising in contract or in tort. In witness whereof I have hereunto set my hand and seal this 29th day of February, 1908. Read to the said Mary Fitzgerald, Admrx., etc., and Edward A. Fitzgerald, and subscribed by him in our presence, this 29th day of February 1908. Mary X̲ Fitzgerald, as administratrix of the estate of Martin J. Fitzgerald, deceased. Witness: Mary Fitzgerald. Edward A. Fitzgerald, Father. Mary X̲ Fitzgerald, Mother. Witness for Edward A.

Fitzgerald, and for mark of Mary Fitzgerald: C. J. Smith."

This court, so far as we have noticed, has not considered and determined the precise question involved. In *Wardell v. McConnell*, 25 Neb. 558, the syllabus is as follows: "The rule is that where the damages are uncertain, accord and satisfaction before judgment by one of several joint wrongdoers is satisfaction as to all; but the discharge of a party not shown to be a joint wrongdoer will not operate as a discharge of the other defendants." The point involved in the case and decided by the court is stated in the last paragraph of the syllabus. It is said in the opinion that "the testimony fails to show that Huber had ever sold intoxicating liquor to J. B. McConnell, the husband of the plaintiff in that action, and it is expressly proved that Mrs. McConnell had no facts in her possession at the time of bringing the action to justify her in joining Huber as defendant, and if the testimony before us is to be believed, a verdict must have been rendered in his favor.

The opinion cites *McReady v. Rogers*, 1 Neb. 124, in which it is stated: "Several actions may be brought and several judgments recovered against several wrongdoers, although but one satisfaction can be had." In *Iddings v. Citizens State Bank*, 3 Neb. (Unof.) 750, *Wardell v. McConnell, supra,* is cited, and the point decided in that case is reaffirmed in these words: "The discharge of a party not shown to be a joint wrongdoer will not operate as a discharge of the other defendants." It must not be inferred therefore from these cases that this court has passed upon the question whether a settlement and release of one of several joint wrongdoers will necessarily amount to an accord and satisfaction of all damages suffered, and so discharge all of the parties liable therefor. In *Lovejoy v. Murray*, 70 U. S. 1, the following propositions are decided: A judgment not fully satisfied against one or more co-tresspassers is no bar to an action against one not joined in the first suit. Persons engaged in committing

the same trespass are joint and several trespassers, and not joint trespassers exclusively. Satisfaction accepted in full for injury done precludes plaintiff from second recovery for same damages, though he may have obtained two or more judgments for the same tort. This is the leading case in that court upon those propositions, and has been followed as such in subsequent cases in that court, and in the various state courts.

In the case at bar we have a complete settlement and release of one of the parties liable from all claims of damage arising from one injury caused, as we are now supposing, by the joint action of several parties. Whether this should operate as release of all the parties jointly liable is a question that has been much discussed by the courts in this country and in England, and upon which there have been conflicting opinions. In ancient times it was quite uniformly answered in the affirmative. Such releases were usually formal and executed under seal; and, if they recited that all the damages occasioned by the injury had been satisfied, they were held to be conclusive upon the parties executing them. The rule then was, as it has since universally been held to be, that a party was not entitled to more than one satisfaction for an injury done him. If the injury had been fully compensated, he had no further right of action, and the release executed under seal acknowledging full compensation for the injury could not be contradicted or explained. It would seem that, if the courts in later decisions had kept this principle in mind, some of the uncertainty of the law upon this question might have been avoided. If a settlement by one of several joint wrongdoers, in which he admitted that the damages caused by the wrong done amounted to a certain specified sum, was not conclusive against the other wrongdoer, it is a little difficult to understand by what reasoning it could be made conclusive in his favor. It would seem that the real question would be whether the party injured had in fact been fully compensated for his injury, and his admission that his injury was limited to a certain sum, which

admission was made for the purpose of obtaining a settlement with one of the parties who caused his injury, might under some circumstances have been considered open to explanation. When, however, he made such admission with due solemnity and under seal, it was in the earlier cases, at least, held to be conclusive against him. There is reason in holding that, if one of the joint wrongdoers acted for all and assumed to settle the whole matter and make full settlement of all claims of the injured party, such settlement might be binding upon all parties. We do not see upon principle why a part satisfaction and release of one wrongdoer should operate in favor of other wrongdoers. It is generally held that there is no right of contribution existing between wrongdoers, and the collection of part satisfaction from one is not an injury, but rather a benefit, to the others. It is not the policy of the law to encourage litigation, but rather to favor settlement. Several wrongdoers who are jointly and severally liable for the injury done may not agree as to their liability, nor as to the desirability of adjusting the matter. Some of them might be willing to compromise with the injured party by paying a just proportion of the whole damage done, and be unwilling or even unable to pay the whole damage. Some men are quite eager for litigation; others will do anything reasonable to avoid it. If some of the wrongdoers are willing to adjust the matter by paying their reasonable proportion of the damage done, and the injured party can accept such payment and still reserve his claim against the more stubborn ones, such a construction of the law would seem to facilitate settlement and tend to avoid litigation. This idea is stated and elaborated in *Louisville & Evansville Mail Co. v. Barnes' Adm'r,* 117 Ky. 860. See, also, *Bloss v. Plymale,* 3 W. Va. 393; *Robertson v. Trammell,* 37 Tex. Civ. App. 53, 83 S. W. 258; *O'Shea v. New York C. & St. L. R. Co.,* 105 Fed. 559; *Carey v. Bilby,* 129 Fed. 203; *Gilbert v. Finch,* 173 N. Y. 455, 61 L. R. A. 807; *Home Telephone Co. v. Fields,* 150 Ala. 306, 43 So. 711; *El Paso &*

*S. W. R. Co. v. Darr,* 93 S. W. (Tex. Civ. App.) 166; *City of Chicago v. Babcock,* 143 Ill. 358. In 24 Am. & Eng. Ency. Law (2d ed.) 307, the law is stated as follows: "But it is a well-settled rule that, where a release of one wrong-doer is not a technical release under seal, then the intention of the parties is to govern, and it becomes a question of fact for the court or jury whether or not what the releasor has received was received in full satisfaction of his wrong; and, if it appears that it was not so received, it is only *pro tanto* a bar to an action against the other wrongdoers." Private seals do not affect the equity or legality of written instruments or contracts in this state. Comp. St. 1909, ch. 81, sec. 1. If this defendant was not a joint trespasser with the railroad company, it is conceded that the defense of settlement fails, and that, if defendant's negligence was the proximate cause of the injury, the court should have submitted the case to the jury with instruction to ascertain the amount of the plaintiff's damages, and, after allowing the amount that had been received thereon, find their verdict for the remainder.

If the defendant and the railroad company were joint tort-feasors, as we have assumed in this discussion, the question is: Has the plaintiff been fully recompensed for the injury done? If the plaintiff received this money from the railroad company as full compensation for the damages caused by the injury complained of, and agreed with the railroad company to so receive it, and the parties were jointly liable for the wrong done, it would seem that the authorities generally hold that she is bound by that agreement, and cannot now maintain this action against this defendant, even though this defendant did not directly nor indirectly take any part in the settlement or contribute anything towards the consideration therefor. It was held by this court in the cases cited above that, even where there had been an accord and satisfaction with one party for the injury done, and that party formally released, it would not operate as a defense for the party whose wrongful act caused the injury, unless the party released was also in

fact a joint wrongdoer.   If this principle is conversely stated, an injured party who releases one of several joint wrongdoers from liability, for a consideration which he agrees to accept as full compensation for the injury done, thereby releases all who were jointly and severally liable therefor.   This is in harmony with the authorities in general.   This court considers itself committed to this rule.

The evidence is not such as to require the court to find as a matter of law that there was such an agreement.   The rule that oral evidence is inadmissible to vary the terms of written instruments is generally applied only in suits between parties to the instrument.   "It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others."   1 Greenleaf, Evidence (16th ed.) sec. 279.   It will be seen that there is no such express provision in the receipt and contract of settlement.   When these papers were presented to the plaintiff for her signature, the question was asked: "Does this release only the Burlington?" ' And it was answered by both the plaintiff's counsel and Mr. Thomas, who represented the railroad company, that it only released that company, and the papers were thereupon executed by this plaintiff.   We do not think the court should so construe the transaction as matter of law.   Under the circumstances disclosed in this record, the question was for the jury.   The plaintiff can have but one satisfaction for the injury.   She can only recover from this defendant, in any event, the amount of damages occasioned by the injury, less such payment as she has received thereon.

· In this discussion we have also assumed that the defendant was negligent, and that its negligence was a proximate cause of the injury complained of, but this has been assumed only for the purpose of discussion.   The evidence is conflicting as to the negligence of this defendant, and

whether such negligence, if any, was the proximate cause of the injury. This question, also, should be submitted to the jury for its determination.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., concurs in this conclusion.