No. 46,714

DR. JOHN E. FIESER, *Appellant*, v. ST. FRANCIS HOSPITAL AND NURSING, INC., THE WICHITA CLINIC, and DR. JOHN F. LANCE, *Appellees*.

(510 P. 2d 145)

Opinion filed May 12, 1973.

*Terry O'Keefe,* of Wichita, argued the cause, and *Martha R. Hodges* and *Walter C. Williamson,* also of Wichita, were with him on the brief for the appellant.

*Lawrence McDonough,* of Jochems, Sargent & Blaes, of Wichita, argued the cause, and *J. Francis Hesse,* of the same firm, was with him on the brief for St. Francis Hospital and School of Nursing, Inc., appellee.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Robert C. Foulston,* of the same firm, was with him on the brief for the Wichita Clinic and Dr. John F. Lance, appellees.

The opinion of the court was delivered by

FROMME, J.: This is an appeal by plaintiff from summary judgments entered in favor of all defendants. The problem presented concerns a release given to an original tortfeasor and raises the question of what effect such a release has on a subsequent malpractice action.

On March 7, 1969, plaintiff was injured when his car collided with another automobile parked on a highway near Wellington, Kansas. The offending automobile was owned by Kenneth J. Stinnett and had been left unattended on the highway by his son, James D. Stinnett. On March 17, 1969, plaintiff in compromise and settlement with the Stinnetts received $2300 for damage to his car and $1200 for medical expenses and injuries to his person. He signed a general release which in pertinent part reads as follows:

". . . the undersigned hereby releases and forever discharges Kenneth Stinnet[t] and James Stinnet[t] . . . and all other persons, firms or corporations liable or who might be claimed to be liable, . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 7th day of March, 1969 . . .

"Undersigned hereby declares that the terms of this settlement have been

completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

It was stipulated that at the time the release was signed plaintiff did not know he had suffered a ruptured intervertebral disc that would require hospitalization and surgery, although the ruptured disc was directly caused by the accident. Several months after the accident plaintiff learned of the ruptured disc and selected the defendant, John F. Lance, M. D., an orthopedic surgeon to treat him. It was stipulated that plaintiff exercised due care in selecting the surgeon.

On January 15, 1970, Dr. Lance assisted by the personnel of St. Francis Hospital and School of Nursing, Inc., performed a laminectomy on plaintiff's back to relieve the effects of the ruptured disc. During the operation a four by twelve inch sponge was left in plaintiff's body. As a result of this act of negligence, a second operation was necessary to remove the sponge.

The present action was brought against the doctor and hospital for negligence in performing the laminectomy and in subjecting the plaintiff to a second operation to extract the sponge.

The defendant doctor and hospital filed a motion for summary judgment attaching the Stinnett release of March 17, 1969, and asserting that said release constituted a full release of the claim of plaintiff against the defendants. The facts necessary for a determination of the motion were stipulated by the parties, the motion was argued and the court entered summary judgment in favor of all defendants. This appeal followed.

Before considering the questions raised on this appeal we wish to note this is the third appeal to reach this court arising from the injuries plaintiff incurred in this automobile collision. In *Fieser v. State Farm Mutual Automobile Ins. Co.*, 210 Kan. 418, 502 P. 2d 837, we considered the liability of plaintiff's own insurance company for medical benefits. In *Fieser v. Stinnett*, 212 Kan. 26, 509 P. 2d 1156, we upheld the validity of the Stinnett release so far as the liability of the Stinnetts is concerned. We are here concerned only with the effect of the Stinnett release on the malpractice action.

Two Kansas cases, *Keown v. Young*, 129 Kan. 563, 283 Pac. 511, and *Paris v. Crittenden*, 142 Kan. 296, 46 P. 2d 633, were relied on by defendants in the court below. In *Keown* it was held:

"When one sustains personal injuries by the negligence of another and settles his claim for damages against such party, and executes to him a release and discharge 'of all suits, actions, causes of action and claims for injuries and damages, which I have or might have arising out of the injuries,' such release covers and includes a claim for injuries resulting from the negligence of a physician called by the injured party to treat his injuries when there is no claim of a lack of due care in selecting a physician or in following his advice with respect to the treatment." (Syl. 3.)

The release in the instant case is even broader than the one in *Keown* since it purports to release "all other persons, firms or corporations" for liability "from any and all claims . . . which have resulted or may in the future develop from an accident which occurred on or about the 7th day of March, 1969 . . ."

*Keown* was followed by *Paris v. Crittenden,* supra, which stated in the syllabus:

"A person injured in a stairway was taken to a hospital where he was treated in a negligent manner by a carefully chosen physician, which resulted in a serious injury—the loss of the use of an arm. He brought an action against the original wrongdoers, and afterwards settled with them for the injury for a small sum. After treatment by the physician for an extended time and after settling with defendants, he brought this action against the physician for malpractice and alleged the loss of the use of his arm through the physician's negligence. *Held,* that the original wrongdoers were guilty of the proximate result to plaintiff, and when they settled with plaintiff and secured a release from all damages growing out of the accident his release covered the negligence of the physician and acquitted him of all damages in his treatment."

In addition to *Keown* and *Paris* the defendants-appellees rely on *Harris v. Brian,* 255 F. 2d 176, a case from the tenth circuit court of appeals which recognizes and follows the Kansas rule set out in *Keown* and *Paris.*

The plaintiff-appellant points out that in each of the foregoing cases the release was not given until after the injured party had received the treatment and hospitalization, and the tortious acts had occurred. In the present case the release was executed only ten days after the automobile accident and, although plaintiff had seen his own personal doctor several times, x-rays had failed to disclose any need for back surgery. He had not consulted the defendant Dr. Lance but the extent of his physical injuries appeared minimal. Plaintiff argues the Stinnett release was not intended to release the defendants from liability for their subsequent tortious acts and that the amount received from the Stinnetts was woefully inadequate to cover subsequent injuries received at the hands of the defendants.

Plaintiff argues that the *Keown* and *Paris* rule is harsh and unjust

under the facts of the present case and that the rule should no longer be followed in Kansas. If said rule is applied the defendants are thereby insulated against liability for their alleged tortious acts committed months after the release was executed. They were unknown wrongdoers, not sharing in making reparations when the release was executed, yet they are gratuitously discharged from liability for subsequent tortious acts. Such a result, he argues, could not have been intended by the parties to the release and will eventuate in a windfall to the defendants at the expense of plaintiff.

We are inclined to agree with plaintiff's assessment of the situation and believe that justice requires this court to take a third look at the rule followed in the *Keown* and *Paris* cases.

Those cases were based in part upon principals of causation. When there is a direct causal connection between the original injury and any subsequent injury suffered at the hands of another in alleviating the effects of the original injury the original tortfeasor may be liable for all such injuries. If a negligent party is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from the normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner. This rule has received general approval (Restatement of the Law, Second, Torts, § 457) and we see no need for questioning the rule in this case.

However when a tort victim settles his claim for damages against the original tortfeasor and executes to him a general release, why should such release cover and include claims for injuries subsequently received at the hands of a treating physician? The rule appears to have originated in the common law which recognized but a single cause of action against all contributing tortfeasors. (See 39 A. L. R. 3d, § 2 [a], p. 264.) The rule has some justification when applied to joint tortfeasors whose tortious acts are concurrent and result in a single injury. Here the alleged tortious acts of the defendants were not concurrent and although the malpractice was not entirely independent of the original injuries it was much later in time. We believe in *Keown* and *Paris* this court erroneously treated the parties as joint tortfeasors whose separate independent acts were improperly considered concurrent in time and effect.

Since the *Keown* and *Paris* cases were decided by this court the traditional rule applied in those cases in regard to a release has been steadily eroded in other jurisdictions. For instance in several

:states, such as North Carolina, statutes have been enacted to cover the particular situation created by a malpractice and a release. N. C. Gen. Stat., § 1-540.1 provides:

"The compromise settlement or release of a cause of action against a person responsible for a personal injury to another *shall not operate as a bar to an action by the injured party againt a physician or surgeon or other professional practitioner* treating such injury for the negligent treatment thereof, unless the express terms of the compromise, settlement or release agreement given by the injured party to the person responsible for the initial injury provide otherwise." (Emphasis supplied.)

Other state courts have attempted to alleviate the harsh effects of the rule by engrafting exceptions, such as the "new injury" exception recognized and applied in *Purchase v. Seelye*, 231 Mass. 434, 121 N. E. 413, and *Corbett v. Clarke*, 187 Va. 222, 46 S. E. 2d 327. Others have seemingly recognized an exception when the malpractice occurs much later than the date of the release, as in *Noll v. Nugent*, 214 Wis. 204, 252 N. W. 574. Still others have based an exception on gross negligence of the physician as distinguished from the ordinary negligence of the original tortfeasor, as in *Fletcher v. Hand*, 123 U. S. App. D. C. 182, 358 F. 2d 549, which applied the Virginia law. We have examined each of these exceptions and do not believe they should be applied in the present case.

The trend away from the traditional rule in *Keown* and *Paris* becomes apparent on reading the annotation in 39 A. L. R. 3d 260, *et seq.*, and the proceedings of the American Law Institute, 47th Annual Meeting (1970) p. 382. At least twelve states have now adopted what is referred to in the A. L. R. 3d annotation at p. 273 as the modern rule. This rule is incorporated in the 1970 change made by the American Law Institute in the Restatement of the Law, Second, Torts, § 885, as it appears in Tentative Draft No. 16, relating to "the effect of release of or payment by or on behalf of one of several tortfeasors." Section 885 now reads as follows:

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it shall do so.

"(2) A covenant not to sue one tortfeasor, or not to proceed further against him, does not discharge any other tortfeasor liable for the same harm.

"(3) Payments made by any person in compensation of a claim for a harm for which others are liable as tortfeasors diminish the claim against them, whether or not the person making the payment is liable to the injured person, and whether or not it is so agreed at the time of payment, or the payment is made before or after judgment. The extent of the diminution is the amount of the payment made, or a greater amount if so agreed."

The former traditional rule has been deleted from the current draft of the Restatement.

Under the modern trend of decisions when a successive tort occurs at the hands of an independent tortfeasor a general release given to the original tortfeasor does not automatically release the successive tortfeasor. A successive tortfeasor may be released if it is so intended or if the consideration paid for the release constitutes full compensation or is accepted as such. If the release of the original tortfeasor is not actually intended to release doctors and hospitals who have treated or may in the future treat the tort victim, and if the amount paid to the tort victim does not constitute full compensation for claims against the original tortfeasor and the doctor and the hospital as well, and was not accepted as such, the tort victim can fairly and equitably seek further recovery from the doctor and the hospital for malpractice. (See *Daily v. Somberg*, 28 N. J. 372, 146 A. 2d 676, 69 A. L. R. 2d 1024; *Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 92 N. W. 2d 96; and cases collected in 39 A. L. R. 3d, § 4, p. 274.)

In arriving at the holding in *Daily v. Somberg*, supra, the New Jersey court stated:

". . . Where, as in *Adams* [*Adams v. DeYoe*, 11 N. J. Misc. 319, 166 Atl. 485] and here, the court is concerned not with a joint tort but with successive independent torts, it is even more evident that the release of the original tortfeasor may not rationally be given the effect of automatically releasing the successive tortfeasor who, though he has made no payment whatever towards satisfaction of the injury he wrongfully inflicted, seeks a windfall because of the compromise of the claim against the original tortfeasor. [Citations omitted.]" (28 N. J. pp. 383, 384.)

Whether a release given to the original tortfeasor allegedly responsible for an injury has been intended to release both the original tortfeasor and the doctor and hospital who treated the tort victim and whether the tort victim has been fully compensated are questions of fact. (See *Daily v. Somberg*, supra, and *Couillard v. Charles T. Miller Hospital, Inc.*, supra.)

This court no longer believes that the rule in *Keown* and *Paris* which was applied in *Harris v. Brian*, supra, should be applicable in Kansas with respect to successive tortfeasors. When a general release discloses on its face that it has been given to named releasees who denied liability but made payment by way of compromise and settlement, then and in that event other alleged wrongdoers who were not parties to the release and made no payment toward satisfaction can fairly be called upon to show that either the release

which they rely on was intended to discharge them or that the releasor has received full compensation. If they are unsuccessful in their proof then they should not be insulated from liability for their tortious acts.

The rule relating to the release of successive tortfeasors declared in *Keown v. Young,* supra, and in *Paris v. Crittenden,* supra, is disapproved and said cases are overruled insofar as they conflict with the rule adopted in the present opinion.

In order that our present holding be properly understood we do not retreat from our present rules on causation. If a negligent party is liable for another's bodily injury, he remains subject to liability for any additional bodily harm resulting from the normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner. Neither are we called on to consider the effect of a general release upon the liability of joint tortfeasors whose acts are concurrent as to time and injury. The rule which we now declare applies only to general releases, such as the one in the present case, as they affect the liability of successive tortfeasors. The change will not effect the validity and binding effect of a release on the liability of tortfeasors named and specifically identified in a release. However, when the execution of a general release is pleaded as a release of liability against a successive tortfeasor unnamed in said release and who has made no payment toward satisfaction, the party pleading said release can fairly be called upon to show that the release was intended to discharge him or that the releasor has received full compensation. As to such unnamed successive tortfeasors the release shall be considered ambiguous.

The execution of a release pleaded by a defendant in his answer is an allegation of an affirmative defense concerning which the defendant must sustain the burden of proof. (*Tabor v. Lederer,* 205 Kan. 746, 472 P. 2d 209.) In such case, since the defendant was not a party to the written release, parol evidence may be introduced to determine the intention of the parties. (See *Couillard v. Charles T. Miller Hospital, Inc.,* supra; *Dickow v. Cookingham,* 123 Cal. App. 2d 81, 266 P. 2d 63, 40 A. L. R. 2d 1066; *Fitzgerald v. Union Stock Yards Co.,* 89 Neb. 393, 131 N. W. 612.)

In the present case none of the defendants were named in the release or made payment toward satisfaction of any liability. Since the release in the present case did not have a conclusive effect upon the liability of the defendants as attributed to it by the trial court

issues of fact were presented which precluded summary judgments.

The summary judgments in favor of defendants are reversed and the cause is remanded with directions to proceed in accordance with the views expressed herein.