CLAIRE SCHEIDELER, APPELLANT, V.
H. F. ELIAS AND THE LUTHERAN HOSPITAL SOCIETY, INC.,
OF BEATRICE, NEBRASKA, APPELLEES.

309 N.W.2d 67

Filed August 7, 1981.   No. 43316.

Galloway, Wiegers, Sprouse & Heeney and K. E. Mahlin for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Claire Scheideler, the plaintiff and appellant herein, appeals to this court from a judgment entered by the District Court of Gage County, Nebraska, sustaining the joint motion of the defendants, H. F. Elias, M.D., and The Lutheran Hospital Society, Inc., of Beatrice, Nebraska, for summary judgment. We reverse and remand.

The factual background of this appeal is as follows. On June 17, 1974, the appellant was injured when the motorcycle he was riding collided with an automobile driven by Mrs. Lois Saathoff. The appellant received numerous lacerations and abrasions to his body and suffered a severe compound fracture of the right fibula. Scheideler was subsequently transported by ambulance to the Lutheran Hospital in Beatrice, Nebraska. Upon admission to the hospital, the appellant was treated by Dr. H. F. Elias.

Scheideler was hospitalized at Beatrice from June 17, 1974, through July 26, 1974, when he was dismissed to go home for a 2-day weekend. The appellant returned to the hospital on July 29, 1974, and remained under the care of Dr. Elias until he was finally discharged on August 26, 1974. Thereafter, the appellant was referred to a physical therapist for outpatient treat-

ment. According to Scheideler, the physical therapist discovered that the appellant's right leg was an inch shorter than his left leg, and referred him back to Dr. Elias. On September 23, 1974, it was discovered that the appellant's right hip was dislocated. Dr. Elias referred Scheideler to an orthopedic surgeon in Lincoln, Nebraska, Dr. Gene Lewallen.

Scheideler was hospitalized at Bryan Memorial Hospital in Lincoln on October 4, 1974, where he was put into traction prior to surgery on his hip. On October 9, 1974, the appellant underwent a Charnley-Mueller total hip replacement in which his hip was reduced and replaced by a prosthesis. Scheideler was discharged from the hospital on October 21, 1974, and subsequently released by his surgeon, Dr. Lewallen, on September 9, 1975.

During the first week of his hospitalization at Lutheran Hospital in Beatrice following the June 17, 1974, accident, Scheideler was contacted by Rodney Arnett, a representative of the liability insurance carrier which insured Lois Saathoff, the driver of the vehicle which collided with the appellant's motorcycle. From that date until June 24, 1975, Scheideler and Arnett had continuing negotiations regarding the appellant's personal injury claim against the Saathoffs. On June 24, 1975, Scheideler signed a release in settlement of his claim against the Saathoffs and all others who "are or might be liable," for a consideration of $46,600.

This action commenced on June 11, 1976, when the appellant filed his petition alleging negligence on the part of the appellees in treating his injuries and in failing to diagnose the dislocated hip. Also named as a defendant to this action was Dr. Patrick Gillespie, a radiologist in Beatrice. Dr. Gillespie was subsequently dismissed as a party defendant upon oral application of the appellant. In their amended answer, Dr. Elias and the Lutheran Hospital alleged that the settlement and release executed by the appellant constituted a re-

lease of all claims asserted by Scheideler, thereby barring his claims against them as a matter of law.

Dr. Elias and the Lutheran Hospital filed a joint motion for summary judgment with the trial court; and on December 7, 1979, at the hearing on the motion, the court file containing all pleadings and discovery documents, the deposition of Claire Scheideler taken on August 2, 1977, and an affidavit of Claire Scheideler was received into evidence by the District Court. At the conclusion of the hearing, all parties stipulated on the record that judgment could be entered at chambers without further notification to the parties. On December 13, 1979, the District Court entered judgment granting the motion for summary judgment and dismissing the petition against both defendants. A subsequent motion for new trial was overruled by the trial court, and the appellant now appeals to this court.

In his brief on appeal, the appellant makes the following assignments of error: (1) The court erred in adopting as a rule of law that the defendant health care providers were not liable to the appellant because of his release of the original tort-feasor; (2) The court erred in not finding that the acts or failure to act on the part of the defendants represented a separate cause of action from any which the appellant had against the Saathoffs; (3) The court erred in finding that the release acknowledged full payment of all special and general damages sustained by the appellant; (4) The court erred in finding that there was no issue of material fact as to the release signed by appellant; (5) The court erred in finding there was no failure of meeting of the minds as to the nature and purpose of the release; (6) The court erred in applying the theory of law that contribution between joint tort-feasors should release all wrongdoers; and (7) The court erred in granting summary judgment in favor of the defendants as a matter of law.

The well-established rule governing the scope of

review by this court of a summary judgment has been stated as follows: " 'The issue on a motion for summary judgment is whether or not there is a genuine issue as to any material fact, and not how that issue should be determined. In considering such a motion, the trial court must take that view of the evidence most favorable to the party against whom summary judgment is directed, giving to that party the benefit of all favorable inferences that may be reasonably drawn from the evidence.' " *McDowell v. Rural Water Dist. No. 2*, 204 Neb. 401, 410, 282 N.W.2d 594, 599 (1979). This court has also held that summary judgment is not appropriate, even where there are no conflicting evidentiary facts, if the ultimate inferences to be drawn from those facts are not clear. *Metro. Tech. Community College v. South Omaha Industrial Park*, 207 Neb. 472, 299 N.W.2d 535 (1980). Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. *Barnes v. Milligan*, 196 Neb. 50, 241 N.W.2d 508 (1976); *Farro v. Rubottom*, 202 Neb. 120, 274 N.W.2d 149 (1979).

The primary issue raised on appeal is whether the complete release of an original tort-feasor bars an injured person from subsequently recovering from a treating physician for alleged acts of malpractice or negligent hospital treatment. The general release signed by Scheideler was a preprinted form containing blank spaces only for the amount of the consideration paid for the settlement, the names of the parties, the dates of the accident or occurrence for which the release was given, the location of the accident in question, and the date of the release, in addition to blank spaces for the signatures of the parties executing the release. The release in question, signed on June 24, 1975, by Scheideler, provided in pertinent part as follows: "RELEASE IN FULL FOR THE SOLE AND ONLY CONSIDERATION OF FORTY SIX THOUSAND SIX HUNDRED and no/100----(Dollars) ($46,600.00) to me/us paid, receipt of which is hereby

acknowledged, I/we hereby release and discharge William A. Saathoff and Lois Saathoff his successors and assigns, *and all other persons, firms or corporations who are or might be liable*, from all claims of any kind or character which I/we have or might have against him or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, known or unknown, resulting or to result from accident on or about the 17th day of June, 1974, at 1 mile west Highway 77 on State Line County road, Kansas-Nebraska line. and I/we *hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him or them* by reason of the above mentioned damages, losses or injuries." (Emphasis supplied.)

In its judgment entered in this matter, the trial court, citing an annotation in 39 A.L.R.3d 26 (actually 39 A.L.R.3d 260, 263 (1971)), adopted and quoted the following: "As a general rule, it has been recognized that a tortfeasor is liable for the consequences of the negligence, mistake, or lack of skill of a physician or surgeon attending the injured person, if the injured person exercised reasonable care in securing the services of a competent physician or surgeon, the reasoning being that the additional harm is either (1) a part of the original injury, (2) the natural and probable consequence of the tort-feasor's original negligence, or (3) the normal incidence of medical care necessitated by the tortfeasor's original negligence."

The trial court, in affirming the motion for summary judgment, found: "3. Prior to June 24, 1975, the plaintiff had possible claims against Saathoff, defendants and all other persons or institutions involved in his treatment and care that he may have claimed to be wrongdoers. 4. Plaintiff during all of the negotiations for settlement and at the time the Release was executed was represented by counsel. Plaintiff was not overreached

or mislead [sic] in any way to the end that there was a mistake or failure of meeting of the minds as to the nature and purpose of the Release. The evidence shows without contradiction that plaintiff by his release acknowledges that it was in payment in full of the charges made by both defendants, and that the sum of $30,673.79 included in the settlement claim was for general damages suffered by plaintiff, but was not itemized. 5. There is no issue of material fact as to the Release dated June 24, 1975, being a full release of any claim that plaintiff had against Saathoff by reason of the collision between the vehicles, and, further, that it was a full release of any claim plaintiff had against defendants, or either of them, for care and treatment during 1974. To hold otherwise would destroy the procedure of negotiation and settlement of similar claims, overlapping of claims and damages, and leave open the possible liability of third persons who render treatment in circumstances similar to this case, but were not named in the Release. Plaintiff had an option to negotiate the Release on a limited liability basis, but he elected otherwise."

As is apparent from analysis of the cases by the editor of the annotation entitled Release of One Responsible for Injury as Affecting Liability of Physician or Surgeon for Negligent Treatment of Injury, found at 39 A.L.R.3d 260 (1971), there are two separate and distinct, and in some respects conflicting, rules of law which have been followed by various jurisdictions with reference to the legal issues presented in this case. The first rule of law, which was based upon the common law, is that a general release executed in favor of one responsible for plaintiff's original injury, at least in the absence of a different intention positively revealed by the language or circumstances of the release, or of a finding that negligence by the physician or surgeon produced an entirely new injury, precludes an ordinary negligence action against the physician or surgeon for damages incurred by his negligent treatment of the

injury. This rule has been generally referred to as the traditional rule. The traditional rule is subject to an exception that a release does not bar the injured party from recovery where a new injury has been produced through the physician's or surgeon's negligence. The second rule, followed by a substantial and increasing number of jurisdictions, is that the release by an injured party of the one responsible for the injury does not, of itself, in the absence of language indicative of such an intention on the part of the parties, preclude an action by the injured party against the physician or surgeon for negligent treatment of the injury, at least unless there has been full compensation in fact for the injured party's total injury. We do not believe that this court has heretofore passed upon or adopted one of the foregoing rules as applicable in this state. Both of these rules are set out, analyzed, and evaluated at some length in the A.L.R.3d annotation previously referred to. In *Thornton v. Charleston Area Medical Ctr.*, 213 S.E.2d 102, 107-08 (W. Va. 1975), that court reviewed the annotation and stated as follows:

"The rule as reconstructed by the writer from an annotation found at 39 A.L.R.3d 260 (1971), is characterized as the 'traditional' resolution and is summarized as follows:

"'A general release executed in favor of the one responsible for a plaintiff's original injury, in the absence of a different intention positively revealed by the language or circumstances of the release, precludes an ordinary negligence action against a physician or hospital for damages incurred by their negligent treatment or medical care of the original injury.'

"In this composite form the rule is substantially followed in the following jurisdictions: Poltera v. Garlington, 489 P.2d 334 (Colo. App. 1971); Feinstone v. Allison Hospital, Inc., 106 Fla. 302, 143 So. 251 (1932); Tidwell v. Smith, 27 Ill. App. 2d 63, 169 N.E.2d 157 (1960); Staehlin v. Hochdoerfer, 235 S.W. 1060

(Mo. 1921); Mainfort v. Giannestras, 49 Ohio Ops. 440, 111 N.E.2d 692 (Ohio Com. Pl. 1951); Farrar v. Wolfe, 357 P.2d 1005 (Okl. 1960); Williams v. Dale, 139 Or. 105, 8 P.2d 578 (1932); Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550 (1937); and Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327 (1948).

"On the other hand, the result reached by this Court in the recent Cox v. Turner case [207 S.E.2d 152 (W. Va. 1974)] is very similar to that which is indicated if we should choose to follow the so-called 'modern' rule that a release of the original tort-feasor may not *necessarily* bar a further recovery against a successive and independent tort-feasor who negligently or unskillfully renders hospital or medical care in the treatment of the injury caused by the original tort-feasor. Presently, some fourteen jurisdictions have adopted a modification of the traditional rule which provides that:

"'A release by an injured party of the tort-feasor responsible for the original injury does not *per se*, in the absence of language indicative of such an intention on the part of the parties, preclude a second action by the injured party against a physician or hospital for negligent treatment or medical care of the original injury, if there has been less than full compensation recovered for the injured party's total injuries.'

"In substance, this rule has been adopted in the following jurisdictions: Cimino v. Alway, 18 Ariz. App. 271, 501 P.2d 447 (1972); Ash v. Mortensen, 24 Cal. 2d 654, 150 P.2d 876 (1944); Knight v. Lowery, 228 Ga. 452, 185 S.E.2d 915 (1971); Smith v. Conn, 163 N.W.2d 407, 39 A.L.R.3d 251 (Iowa 1968); Fieser v. St. Francis Hospital and School of Nursing, Inc., 212 Kan. 35, 510 P.2d 145 (1973); Selby v. Kuhns, 345 Mass. 600, 188 N.E.2d 861 (1963); Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96 (1958); Hansen v. Collett, 79 Nev. 159, 380 P.2d 301 (1963); Wheat v. Carter, 79 N.H. 150, 106 A. 602 (1919); Daily v. Somberg, 28 N.J. 372, 146 A.2d 676, 69

A.L.R.2d 1024 (1958); Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962); Galloway v. Lawrence, 263 N.C. 433, 139 S.E.2d 761 (1965); McMillen v. Klingensmith, 467 S.W.2d 193 (Tex. 1971); DeNike v. Mowery, 69 Wash.2d 357, 418 P.2d 1010 (1966).

"In jurisdictions following the modern rule, execution of the release in favor of the original tort-feasor does not furnish an irrebuttable presumption that the injured party also contemplated that he had recovered a complete satisfaction for his injuries, including those suffered at the hands of a negligent physician or hospital treating his original injuries. To the contrary, in the 'modern' rule jurisdictions, parol evidence is admissible to explain the intention of the parties at the time the release of the original tort-feasor was executed. Dickow v. Cookinham, 123 Cal. App. 2d 81, 266 P.2d 63 (1954); Knight v. Lowery, *supra;* Community School District v. Gordon N. Peterson, Inc., 176 N.W.2d 169 (Iowa 1970); Couillard v. Charles T. Miller Hospital, Inc., *supra*; Krenz v. Medical Protective Company, etc., 57 Wis.2d 387, 204 N.W.2d 663 (1973) .... [W]e are led to the conclusion that there is an aspect of inherent unfairness in the ineluctable application of an irrebuttable presumption which holds that a release of an original tort-feasor executed after treatment of injuries operates as an absolute bar to a second action by the injured party against a physician or hospital for negligent treatment or care of the original injury. Such a rule may operate unjustly for the benefit of negligent parties who have caused great injury to a person by unskillful medical treatment or negligent hospital care in that it absolutely frees them from liability or obligation to contribute to the recovery which the law has characterized as total. Such a rule does not provide for the contingency of latent and unpredictable manifestations of known injuries which may result in a greater and more permanent harm in the future, in a manner entirely unanticipated

when the original tort-feasor was released. And, although the law would have it otherwise, the rule that the release constitutes an absolute bar may, in fact, prove to be a trap for the unwary layman who is ignorant of the law. To particularize, is it reasonable and fair to conclude that an injured party also excuses his physician or hospital from negligence when he releases a motorist who struck his motorcycle on the highway and injured him? The question answers itself. Legal fiction should serve justice, not strangle it."

In *Wecker v. Kilmer*, 260 Ind. 198, 202-03, 294 N.E.2d 132, 134-35 (1973), the court, in discussing the traditional rule, stated:

"This allegedly prevailing view is also illogical because the alleged original tortfeasor has *disclaimed any liability* in the release. If one were injured in an accident where no one was at fault and one's injuries were subsequently aggravated by the negligent acts of a physician, one would not be without a cause of action against the physician. We have no proof that the *alleged* original tortfeasor was in fact a tortfeasor. It should only be to avoid unjust enrichment and prevent double recovery that any monies received from other sources would be credited against a recovery from the negligent physician.

"We note that this so-called prevailing view has received intensive criticism from modern commentators.

"'Dean Wigmore has denounced the doctrine as a "surviving relic of the Cokian period of metaphysics" (17 Ill. L. Rev. 563), Dean Prosser has criticized it as "at best an antiquated survival of an arbitrary common law procedural concept" (Torts, p.244) and Mr. Justice Rutledge, speaking for the Court of Appeals for the District Of Columbia, observed that "The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation

are discharged, while one willing to right the wrong and no more guilty bears the whole loss. * * * Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability."' *Derby v. Prewitt* (1962), 12 N.Y.2d 100, 104, 187 N.E.2d 556, 558.

"We also note that the 'prevailing view' has become continually less acceptable to courts over the past two decades. See Anno. 39 A.L.R.3d 260.

"Two factors should be controlling in determining the effect of an agreement purporting to operate as a release: (1) Whether the injured party has received full satisfaction; and (2) Whether the parties *intended* that the release be in full satisfaction of the injured party's claim, thus releasing all successive tortfeasors from liability. See *Harper & James, Torts* (1956), § 10.1, *Prosser on Torts* (4th ed. 1971) at 304. Both are questions of fact and normally to be determined by the jury. The actual form or title of the release is immaterial and parol evidence should be permitted to determine the intent of the parties."

In this regard, we also note that the modern rule has apparently been incorporated in the Restatement (Second) of Torts § 885 (1979). That section provides:

"(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them.

"(2) A covenant not to sue one tortfeasor or not to proceed further against him does not discharge any other tortfeasor liable for the same harm.

"(3) A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made,

whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment."

After considering the advantages and disadvantages of both of the rules discussed above, as well as the authorities and writings of legal experts with respect to same, this court has concluded that the "modern rule" is the better and more equitable rule, and we hereby adopt it for application in this state in the instant case and henceforth.

In their brief on appeal, the appellees cite *Fitzgerald v. Union Stock Yards Co.*, 89 Neb. 393, 131 N.W. 612 (1911), in support of the proposition that if one of several joint tort-feasors makes settlement with the injured party and pays him damages which he agrees to receive and does receive as full compensation for all damages sustained, it will release all of the joint tort-feasors. Primarily, the appellees contend that if Scheideler is allowed to pursue his suit in negligence against them, he may be allowed a double recovery for the same injury. We do not agree with the appellees' contention for several reasons which distinguish the facts in *Fitzgerald* from those in the instant case.

First, many of the cases cited as authority for the modern rule deal with the situation where the defendant is charged with a subsequent or successive wrong which contributed to the damage for which the original tort-feasor was liable. The distinction made between joint tort-feasors and successive tort-feasors as it relates to the modern rule of release is well set out by the Iowa Supreme Court in *Smith v. Conn*, 163 N.W.2d 407 (Iowa 1968). In that case the court states at 410-11:

"The cases have generally recognized a distinction between the rule of unity of discharge by release as applied to joint or concurrent tort-feasors on the one hand and successive tort-feasors on the other. In New York Court of Appeals in Derby v. Prewitt, 12 N.Y.2d

100, 236 N.Y.S.2d 953, 958, 187 N.E.2d 556, 559, Fuld, J.: 'As to the first asserted basis for the rule, it is obvious that the taxicab driver and the doctor, having neither acted in concert nor contributed concurrently to the same wrong, are not joint tort-feasors. (See Matter of Parchefsky v. Kroll Bros., 267 N.Y. 410, 413-414, 196 N.E. 308, 310-311, 98 A.L.R. 1387.) Their wrongs were independent and successive, rather than joint, and this being so, the plaintiff had not one but two separate and distinct causes of action, one against the cab driver for the negligent operation of his vehicle and the other against the doctor for his alleged malpractice in treating the fracture which the plaintiff sustained in the automobile accident. It is true that the driver could have been held liable for the aggravation of the injury caused by the doctor's negligence but, as pointed out above, that liability is not the result of any concept of joint wrongs but is rather the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. Conversely, it would defy reason to hold the physician liable for injuries caused by the original wrongdoer which were not the consequences of his own carelessness, and no one suggests that a release of the doctor would completely discharge the original wrongdoer.

. . . .

"'Since, therefore, neither the joint tort-feasor doctrine nor the reasons underlying it are here applicable, we may not say, as a matter of law, that the release executed by the plaintiff bars the present action. In the light of our analysis, the question for resolution, and it is to be decided as an issue of fact upon a trial, is whether the plaintiff's settlement with the taxicab driver did actually constitute satisfaction of all damages caused by his wrong or was intended as such. If it did, or was so intended, no claim remained against the doctor. But, if it did not reflect full satisfaction, and

was not so regarded — and the burden of proving this essential fact rests upon the plaintiff — the release will not prevent recovery against the doctor.'"

We are also persuaded by the line of authority under the modern rule which holds that two essential questions of fact are raised in the instant case. These questions pertain to whether the release given to the original tort-feasor is intended to release subsequent tort-feasors, and whether the tort victim has been fully compensated for his injuries. Such questions are for the trier of fact to decide. *DeNike v. Mowery*, 69 Wash. 2d 357, 418 P.2d 1010 (1966); *Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973); *Harris v. Grizzle*, 599 P.2d 580 (Wyo. 1979). We also note the case of *Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 92 N.W.2d 96 (1958), in which the Supreme Court of Minnesota overruled two prior decisions based on the traditional rule. In *Couillard*, the court held that the general release constituted prima facie evidence that the plaintiff had received full compensation for his injuries; that the plaintiff had the burden of proof to establish the contrary; and that where the physician is neither a party nor mentioned in the release, an ambiguity exists as to whether he was intended to be released.

In the present case, neither of the appellees was named in the release executed by the appellant nor did they make payment toward satisfaction of any liability. Furthermore, appellant alleges that since he executed the release prior to his discharge by Dr. Lewallen, he has not received full satisfaction for his injuries. Since we determine that the release in this case does not have the conclusive effect upon the liability as attributed to it by the trial court, there exist material issues of fact which preclude summary judgment. These issues of fact include, at least, whether or not the appellant intended to release Dr. Elias and the hospital (in his affidavit filed in connection with the motion for summary

judgment and in his deposition admitted into evidence, Scheideler alleged he had not so intended), and also whether he had received full payment and satisfaction for all his damages.

We conclude the summary judgment entered in favor of the appellees must be reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BOSLAUGH, J., dissents.