VIRGINIA T. HANZLIK, APPELLANT, V.
FREDERICK F. PAUSTIAN, APPELLEE.
318 N.W.2d 712
Filed April 23, 1982.   No. 43877.

Jon B. Abbott, for appellant.

Sodoro, Daly & Sodoro, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This is a medical malpract$^j$ e case brought by Virginia T. Hanzlik against Freuerick F. Paustian, a physician. Both parties filed motions for summary judgment. A hearing was had and evidence was adduced, consisting of answers to interrogatories, two depositions of the plaintiff, and one of the defendant. The District Court overruled the motion of Mrs. Hanzlik, but sustained that of Dr. Paustian, and ordered the petition dismissed. The court by its judgment found that in order to establish the acts of negligence as alleged in the petition, it would require proof by expert medical testimony. The court determined that the plaintiff had failed to submit such evidence, and concluded that there was no genuine issue of fact. It is such findings which the plaintiff assigns as error.

In her petition, the plaintiff alleged that upon the recommendation of the defendant, she submitted to a dilation of her esophagus which caused a perforation resulting in secondary pneumonia, and necessitated open chest surgery. The negligent acts of which she alleged the defendant was guilty were specified to be: (1) The failure to terminate dilation when he knew or in the exercise of reasonable medical care he should have known that to proceed would result in a complete perforation; (2) The failure to terminate dilation when, in the exercise of reasonable care that an ordinary (nonmedical) person would employ, he should have known that to proceed would result in a complete perforation; and (3) A failure to inform the plaintiff fully and ade-

quately of the serious complications which had developed in the dilation procedure when the defendant in the exercise of ordinary care would know that plaintiff would not consent to further dilation.

For a factual background we will first examine the deposition of Dr. Paustian. He testified that upon examination of Mrs. Hanzlik in Bishop Clarkson Memorial Hospital in August of 1974, he found that she was suffering from a distal esophageal stricture caused by the ingestion of lye some 40 years earlier. Following X-ray studies and an upper gastrointestinal endoscopy, he advised Mrs. Hanzlik that several alternatives for management of her problem were available. The first was to leave the condition as it was; the second, to proceed with upper dilation of the esophagus through utilization of instruments of progressively expanded caliber; and the third, surgical resection of the esophagus. Dr. Paustian recommended dilation because the first alternative was unsatisfactory under the circumstances, and the alternative involving surgery carried a greater mortality risk. According to the defendant's deposition, he explained in detail to the plaintiff the dilation procedure as well as pointing out to her the risk of disrupting the mucosa and resulting bleeding, along with the more dangerous risk of perforating the esophagus. Following this, the procedure of dilation was commenced.

The defendant's deposition further reveals that dilation was done on a daily basis from August 16th through the 19th. Following the August 19th dilation, the plaintiff had modest postdilation pain and some blood appeared on the dilator. An X-ray was taken to determine if there had been any disruption of the integrity of the esophageal wall. A report of the X-ray study stated: "The mucosa is minimally irregular, suggesting that there may be a superficial tear now present." No dilation was done on the 20th because of the postdilation pain, but by the 21st the

pain had subsided, and further dilation was done with the resultant presence of chest pain, a temperature of 101, and a notation of suspected perforation. There was no dilation on the 22nd, but the procedure was done on the 23rd. As of the 23rd, the plaintiff still had mild pain, but, according to the defendant, the "patient [was] very anxious to continue with dilations," and following that dilation a good deal of blood was noted on the sputum, raising a question of confined perforation. An esophagram was done without perforation, and a second dilation with a larger caliber instrument was done on the 23rd, with relative ease. There was a dilation procedure on the 24th. Mrs. Hanzlik's treatment terminated in a ruptured esophagus following the dilation on the 24th, which required that plaintiff undergo major surgery for the drainage of the chest area and examination of the esophagus.

According to the defendant's testimony, he suspected a recurrent confined perforation on August 21st, but he stated that mucosal tears frequently occur, and such condition is not a "contraindication to proceeding with continued dilation." Other than the various hospital records to which Dr. Paustian referred during his testimony, there was no further medical testimony or evidence offered by either party.

Mrs. Hanzlik's answers to interrogatories established that before beginning treatment, the defendant had described to her the procedure involving an "esophagus scope," and warned her that dilation could result in a perforation of the esophagus which would require immediate surgery. She also agreed that she understood his explanation. She admitted that as of the date of answering the interrogatories, she had not employed any experts to consult with her about her lawsuit.

In her deposition, Mrs. Hanzlik also agreed that Dr. Paustian had explained to her the procedure for

dilating or "stretching" her esophagus. She again conceded that he told her about the risk of perforation: "It was a risk. . . . [I]f it did get perforated . . . he would have to take me to surgery right away." It was the plaintiff's belief that the perforation occurred during the last dilation. At one point in her deposition she stated that she did not remember whether the defendant had talked to her about continuing treatments, and in a later portion of the same deposition she admitted that she was asked at each step whether they should proceed with the next treatment or not.

Mrs. Hanzlik said that she was not complaining in her lawsuit about any treatment by Dr. Paustian until the last time, and then she thought he surely must have known that he did something and still she was not taken to surgery until she was "half dead." As a matter of fact, she stated that it was not Dr. Paustian who ever advised her of the perforation, but rather the physician who performed the surgery. She acknowledged, of course, that she would not have expected Dr. Paustian to advise her of the perforation until it had actually happened. However, she went on to say that the doctor had "said there was risks, but the thing I'm getting at, he surely must have known he done that. Why did he . . . wait so many days and let me lay there before he did something about it?"

The question which must be decided on a motion for summary judgment is whether or not there is a genuine issue as to any material fact, and not how that issue is to be decided. *Scheideler v. Elias,* 209 Neb. 601, 309 N.W.2d 67 (1981). The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of cases in which there is no genuine claim or defense. *Brown v. Nebraska P. P. Dist.,* 209 Neb. 61, 306 N.W.2d 167 (1981). The trial court, in considering such a motion, must take the view of the evidence most favor-

able to the party against whom the motion is directed. *Scheideler, supra.* "Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt." *Id.* at 605, 309 N.W.2d at 70.

There appears to be no dispute as to the primary facts. The parties are in agreement that the defendant explained to Mrs. Hanzlik the medical procedures to be employed and the risks which were involved, and that she understood the explanation and warning. Also, it is apparent that the result which Dr. Paustian recognized as a possibility became a reality. However, contrary to the plaintiff's contention, we do not believe, under the evidence and the circumstances in this case, that "the recognition of the alleged negligence may be presumed to be within the comprehension of laymen." *Halligan v. Cotton,* 193 Neb. 331, 336, 227 N.W.2d 10, 13 (1975). To the contrary, the applicable rule is as expressed in *Halligan, supra,* that "whether a specific manner of treatment or exercise of skill by a physician or surgeon demonstrates a lack of skill or knowledge or a failure to exercise reasonable care is a matter that must usually be proved by expert testimony." *Id.* at 335, 227 N.W.2d at 12-13.

However, we also cannot agree with the defendant's claim that Mrs. Hanzlik was obligated to come forward at this stage of the proceedings with expert witnesses to prove the existence of negligence on the part of Dr. Paustian. Summary judgment should not be used to deprive a litigant of a formal trial if there is a genuine issue of fact. *Metro. Tech. Community College v. South Omaha Industrial Park,* 207 Neb. 472, 299 N.W.2d 535 (1980). Dr. Paustian's deposition explained the surgical procedures followed by him, and detailed the possible consequences which might be expected therefrom, but nowhere do we find any evidence that such procedures met the accepted standards of reasonable medical care.

On a motion for summary judgment, the moving party bears the burden of proving that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law. The movant may discharge this burden of proof by a showing that if the case proceeded to trial his opponent could produce no competent evidence to support a contrary position. ''A prima facie showing by the movant for summary judgment—*i.e.,* the production of enough evidence to demonstrate such party's entitlement to a judgment if evidence were uncontroverted at trial—shifts the burden of producing evidence to the party opposing the motion. Summary judgment should be granted to the movant unless the opposing party offers competent evidence . . . that there is a genuine issue as to a material fact.'' *Nader v. de Toledano,* 408 A.2d 31, 48 (D.C. 1979).

The defendant failed to make a prima facie showing of the absence of negligence on his part, and therefore no burden of producing evidence shifted to the plaintiff. Without that prima facie showing, a plaintiff faced with a motion for summary judgment is not required to reveal the evidence he expects to produce to prove the allegations of the petition. *Bishop Cafeteria Co. v. Ford,* 177 Neb. 600, 129 N.W.2d 581 (1964).

The defendant was not entitled to a summary judgment, and the judgment of the District Court is reversed and remanded for further proceedings.

REVERSED AND REMANDED.

CAPORALE, J., disqualified.