(29 P3d 979)

No. 85,075

RICHARD TODD WRIGHT, TIMOTHY WRIGHT, RANDY NEWKIRK, JON POOL, and POOL & COMPANY, CHARTERED, *Appellants*, v. ROSEMARY BACHMURSKI and GEORGE FOSDICK, *Appellees*.

Opinion filed August 10, 2001.

*Michael C. Helbert,* of Law Offices of Michael C. Helbert, of Emporia, for the appellants.

*Steve R. Fabert* and *James P. Nordstrom,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for the appellees.

Before ELLIOTT, P.J., BRAZIL, S.J., and PADDOCK, S.J.

BRAZIL, J.: Plaintiffs Richard Wright, Timothy Wright, Randy Newkirk, Jon Pool, and Pool & Company, Chartered (Plaintiffs) appeal from summary judgment in favor of the defendants, Rosemary Bachmurski and George Fosdick, in a defamation and false light/invasion of privacy case.

We reverse and remand.

The present litigation stems from a newspaper publication about the verdict from a malpractice suit between the parties.

In 1997, George Fosdick sued Wright for accounting malpractice in *Fosdick v. Wright,* No. 71,339, unpublished opinion filed August 18, 1995. Following a jury trial, the jury returned a verdict and found Fosdick 95% at fault and Wright 5% at fault.

Shortly after the verdict, Fosdick and Bachmurski repeatedly contacted the Emporia Gazette, interviewed with a reporter for the Gazette, and submitted a press release. At the interview, either

Fosdick or Bachmurski told Blake Spurney, a reporter for the Gazette, that Wright committed tax evasion. The press release read:

"Written Statement of George W. Fosdick
Fosdick, Plaintiff
vs
Richard Todd Wright an individual and Sinnard, Wright & Company,
CPA's and Pool and Company, Chartered

Case No. 90 C 186

"I am pleased that the defendants have been found guilty of malpractice. The verdict has restored my personal and business integrity in the Emporia community.

"Unfortunately, we think some of the instructions that the judge gave the jury were inappropriate in this situation. An appeal is being considered.

"I am sorry that I was not able to recover any monetary damages for my previous creditors.

"I am grateful to the jury for their hard work and patience during this complex trial."

Based on the information provided at the interview from either Fosdick or Bachmurski, Spurney wrote an article titled: "Accountant found liable for malpractice," which appeared in the Emporia Gazette. The article stated the jury found accountant Todd Wright liable for malpractice and that Fosdick claimed Wright had committed tax evasion and fraud while misleading him about the financial condition of the business.

After Wright informed the newspaper about the article's inaccuracies, the newspaper printed a retraction. In addition, the newspaper reached an out of court settlement with Plaintiffs.

According to the agreement, the newspaper paid Plaintiffs $120,000 to satisfy all claims and damages against the newspaper and its employees that resulted from publication of the article.

Plaintiffs filed this lawsuit against Fosdick and Bachmurski, alleging defamation, false light/invasion of privacy, intentional infliction of emotional distress (outrage), and tortious interference with business activities.

Following discovery, Plaintiffs filed a motion to amend the petition and sought punitive damages. Fosdick and Bachmurski filed a motion for summary judgment premised on a joint tortfeasor

relationship with the Emporia Gazette in publication of the article and claimed the release discharged them from liability. In the alternative, Fosdick and Bachmurski claimed they were entitled to a dollar-for-dollar credit for the settlement with the Emporia Gazette which satisfied all Plaintiffs' damages.

The trial court granted summary judgment in favor of the defendants and concluded they were joint tortfeasors with the Emporia Gazette. The judge held the newspaper's release also released Fosdick and Bachmurski because of their status as joint tortfeasors. By resolving the relationship between the newspaper and the defendants as joint tortfeasors, the judge also found that the newspaper's settlement fully compensated Plaintiffs for their damages. The trial court did not address the merits of Plaintiffs' other claims of liability because of its ruling on the tortfeasor relationship and the effect of the release.

A motion for reconsideration was later denied by the trial court.

Plaintiffs argue the district court erred in granting summary judgment because the release to the Emporia Gazette did not release Fosdick and Bachmurski from liability.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

" 'It has been recognized that summary judgment should be employed with caution in defamation cases. However, summary judgment may properly be granted in a defamation case when the evidence shows no liability as a matter of law and where the essential facts are not in dispute.' [Citation omitted.]" *Clevenger v. Catholic*

*Social Service of the Archdiocese of Kansas City,* 21 Kan. App. 2d 521, 530, 901 P.2d 529 (1995).

Fosdick and Bachmurski's defense rests largely on the premise that the Emporia Gazette release also released them because they claim a joint tortfeasor relationship with the Emporia Gazette. This relationship was the trial court's foundation for determining the effect of the release and granting summary judgment in favor of the defendants. Had the trial court not reached this conclusion, the journal entry makes it clear the remaining issues were for a jury to determine.

The trial court and the defendants are incorrect on both the characterization of the tortfeasor relationship and the effect of the Emporia Gazette's release.

" '[D]efamation is an invasion of the interest in reputation and good name. This is a "relational" interest since it involves the opinion which others in the community may have, or tend to have, of the plaintiff.' " *Gomez v. Hug,* 7 Kan. App. 2d 603, 611, 645 P.2d 916, *rev. denied* 231 Kan. 800 (1982) (citing Prosser, Law of Torts, 4th ed. 1971 at 737). In Kansas, any plaintiff in a defamation action must allege and prove actual damages and may no longer rely on the theory of presumed damages. See *Zoeller v. American Family Mut. Ins. Co.,* 17 Kan. App. 2d 223, 228, 834 P.2d 391, *rev. denied* 251 Kan. 942 (1992).

" ' "The tort of defamation includes both libel and slander. The elements of the wrong include false and defamatory words [citation omitted] communicated to a third person [citation omitted] which result in harm to the reputation of the person defamed." ' [Citation omitted.]" *Dominguez v. Davidson,* 266 Kan. 926, 930, 974 P.2d 112 (1999). Intentional or negligent communication of the defamatory matter is called "publication," and the person making the communication is called the "publisher." See Restatement (Second) of Torts § 577(1) (1977).

Although well settled in other jurisdictions, the effect of republication or repetition of a defamatory statement is an issue of first impression in Kansas.

Each communication of a defamatory statement to a third person generally constitutes a new publication and gives rise to a sep-

arate cause of action against the publisher. 50 Am. Jur. 2d, Libel and Slander § 260, p. 521; Restatement (Second) of Torts § 577A, comment a (1977). When that third person then communicates the original defamatory statement to a fourth person it is called republication or repetition. Republication of a libel is a separate tort which creates a separate basis of liability against the republisher. 50 Am. Jur. 2d, Libel and Slander § 261, p. 522; Restatement (Second) of Torts § 578, comment b (1977). The original publisher may also be liable for republication if repetition by third persons was reasonably expected as the natural and probable consequence of the original publication. Restatement (Second) of Torts § 576, comment c (1977); see *Bolduc v. Bailey*, 586 F. Supp. 896, 901 (D. Colo. 1984) (applying Kansas law).

"While defamation is generally incapable of joint commission and does *not* give rise to solidary [joint and several] liability, whenever two or more persons cooperate in the publication of a libel, all are responsible for the resultant damages, and the victim can sue them either jointly or severally. . . . Even where the words are uttered simultaneously, two or more individuals uttering slanders against the same person cannot be held jointly liable unless the defamation was the result of a concert or conspiracy between them. . . ." 50 Am. Jur. 2d, Libel and Slander § 358, p. 685.

Applying the law of defamation to the facts of this case, there are two separate and distinct causes of action against Fosdick and Bachmurski because there were two publications of the defamatory statements. The first action arose from the communication between Fosdick and Bachmurski and the reporter for the newspaper (the original publication). The second cause of action resulted from the newspaper's story based on the communication with Fosdick and Bachmurski (republication).

The Emporia Gazette effectively republished the defamation by writing a story in the newspaper based on Fosdick and Bachmurski's defamatory statements to one of the newspaper's reporters. The republication was a separate tort which created a separate basis for liability against the newspaper without their settlement with Plaintiffs. Fosdick and Bachmurski are also liable for the Emporia Gazette's republication because they could have reasonably expected the newspaper to write a story as a natural and probable

consequence of the defamatory communication between them and a reporter. The newspaper did not act in concert or conspire with Fosdick and Bachmurski but failed to sufficiently investigate the facts before republishing the libelous story. Absent a concert or conspiracy between them, the newspaper and Fosdick and Bachmurski are not joint tortfeasors.

Fosdick and Bachmurski erroneously claim their actions resulted in a single publication and that they merely "transmitted" or "delivered" the alleged defamatory material in their communication to the reporter. Their reliance on the "single publication rule" and "transmission of defamation" is without merit.

Under the "single publication rule," a single issue or single edition of a periodical or book constitutes a "single publication." Restatement (Second) of Torts § 577A (1977).

"Generally, under the single publication rule any single integrated publication, such as one edition of a newspaper, book, or magazine, or one broadcast, is treated as a unit, giving rise to only one cause of action, even though widely distributed, and regardless of the number of times it is exposed to different people. Under the rule, distinct causes of action do not arise by virtue of the sale of copies of an edition of a newspaper, or by reason of the sale of copies of a book from stock. . . .

"The 'single publication rule' is intended to protect the communication industry from undue harassment and unjust punishment by preventing the filing of a multitude of suits based on one tortious act, and by restricting the time in which such lawsuits may be commenced—that is, preventing the indefinite tolling of the statute of limitations." 50 Am. Jur. 2d, Libel and Slander § 264, p. 526-28.

See Restatement (Second) of Torts § 577A, comment b (1977).

The "single publication rule" is inapplicable to Fosdick and Bachmurski because the cause of action against them did not arise from sale of copies of an edition of a newspaper, magazine, broadcast, or sale of copies of a single book.

The Restatement (Second) of Torts § 581(1) (1977) transmission rule is also of no avail to Fosdick and Bachmurski. The transmission rule makes an exception to the rule that a person who repeats or republishes defamatory matter is subject to liability as if he or she originally published it, if a person only delivers or transmits the defamatory matter published by a third person. "Except as stated in subsection (2), one who only delivers or transmits defamatory

matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character." Restatement (Second) of Torts § 581(1) (1977).

Fosdick and Bachmurski did not merely transmit or deliver the alleged defamatory matter to the Emporia Gazette. They knew or had reason to know of its defamatory character.

In summary, the trial court erred in its characterization of the tortfeasor relationship between the Emporia Gazette and Fosdick and Bachmurski for republication of the defamatory matter. They are independent tortfeasors. Regardless of the relationship between the defendants and the Emporia Gazette, the settlement agreement does *not* discharge Fosdick and Bachmurski from liability.

The effect of a release or covenant not to sue is a legal question, and an appellate court has unlimited review over questions of law. See *York v. InTrust Bank, N.A.*, 265 Kan. 271, 283, 962 P.2d 405 (1998).

The Restatement (Third) of Torts: Apportionment of Liability § 24 (2000) provides:

"(a) A settlement is a legally enforceable agreement in which a claimant agrees not to seek recovery outside the agreement for specified injuries or claims from some or all of the persons who might be liable for those injuries or claims.

"(b) Persons released from liability by the terms of a settlement are relieved of further liability to the claimant for the injuries or claims covered by the agreement, but *the agreement does not discharge any other person from liability*." (Emphasis added.)

The Restatement's position that a release does not release all tortfeasors is consistent with Kansas case law. Although our case law has not articulated this principle so broadly, it underlies decisions by our appellate courts.

In *Luther v. Danner*, 268 Kan. 343, 995 P.2d 865 (2000), Luther brought a wrongful death and personal injury action against a truck driver and the driver's employer. Our Supreme Court considered whether a general release barred claims of the plaintiffs against tortfeasors not specifically named in the release. 268 Kan. at 344. Although the court discussed the effect of the release under com-

parative fault, K.S.A. 60-258a, for a personal injury action, the reasoning of *Luther* can be applied to the case at hand.

After reviewing cases from other jurisdictions and discussing the various approaches to construction of a general boilerplate release, the *Luther* court held that where a party was *"not* identified in the release by name or other specific identifying terminology, there is a rebuttable presumption that their release was not intended. They must bear the burden of rebutting the presumption." (Emphasis added.) 268 Kan. at 352.

In *York*, 265 Kan. at 275, York brought suit against InTrust for fraud and conspiracy, among other claims arising from a real estate transaction. Although discussing agency and vicarious liability, the *York* court concluded that InTrust was not released from liability merely because other defendants obtained a covenant not to sue. 265 Kan. at 286-87.

In the present case, the release is between Richard Todd Wright and Pool & Company and the White Corporation, Inc., doing business as the Emporia Gazette. Fosdick and Bachmurski are not specifically mentioned. Applying Restatement (Third) Torts: Apportionment of Liability § 24, comments f and g (2000), the intent of the parties is given effect to the contract, and if there is a dispute over whether a particular individual is released, the burden of pleading and proving that the settlement releases the individual is on the party claiming release.

Fosdick and Bachmurski have not met their burden that they are released from liability through the Emporia Gazette release. The intent of the release was to shield the Emporia Gazette from liability through the settlement. The release has no effect on Fosdick's and Bachmurski's liability for damages. Fosdick and Bachmurski are still liable for all consequential damages flowing from the defamatory statements to the reporter and the newspaper's republication.

Liability for damages and credit for a settlement are independent of each other. Tortfeasors are liable for all consequential damages resulting from their tortious conduct, including punitive damages where appropriate. When multiple tortfeasors are involved, and one of the potential defendants reaches an out of court settle-

ment with the victim, that settlement does not extinguish any remaining tortfeasors' liability absent a provision in the settlement contract to the contrary. The tort victim may still seek redress for compensatory damages and punitive damages (if warranted) from the courts against the remaining tortfeasors. However, if a jury finds these remaining tortfeasors liable to the plaintiff, they may seek credit from the settlement for compensatory damages.

Fosdick and Bachmurski argue that if they are not released from liability they should receive a dollar-for-dollar credit for the $120,000 from the Emporia Gazette's settlement because defamation is an intentional tort and the amount paid fully compensated Plaintiffs' damages. While the release may have compensated Plaintiffs for compensatory damages, the argument fails to consider possible punitive damages. In the journal entry for summary judgment, the trial court indicated but for its ruling, this case provided a set of facts where "punitive damages would be warranted and likely to be awarded."

The questions raised by the granting of a pro tanto credit in this case for the $120,000 settlement with the Emporia Gazette, involve damages, making this a question of law over which our review is unlimited. See *York*, 265 Kan. at 311.

This is not a case involving the comparative negligence/fault provision of K.S.A. 60-258a, and therefore the rules relating to K.S.A. 60-258a do not apply to our analysis. See *York*, 265 Kan. at 310. Credit for the Emporia Gazette settlement must be limited to compensatory damages.

Although Fosdick and Bachmurski are not joint tortfeasors with the Emporia Gazette, Kansas only permits one recovery for a wrong.

"Kansas has not varied from a rule that limits a plaintiff to only one recovery for a wrong. This rule has been applied throughout the years in situations where partial payments have been made by multiple tortfeasors. A pro tanto credit has been granted to prevent a plaintiff from receiving a double recovery. By definition, the word pro tanto means '[f]or so much; for as much as may be; as far as it goes. Partial payment made on a claim.' Black's Law Dictionary 1222 (6th ed. 1990)." *York*, 265 Kan. at 311.

"When a right of action is once satisfied, it ceases to exist. If part satisfaction has already been obtained, further recovery can only be had of a sum sufficient to

accomplish satisfaction. It is not necessary that the party making payment in partial satisfaction was in fact liable. Anything received on account of the injury inures to the benefit of all and operates as a payment pro tanto. The plaintiff is entitled to only one satisfaction from whatever source it may come." *York*, 265 Kan. 271, Syl. ¶ 24.

Plaintiffs' summary of damages list compensatory damages at $36,812.98, resulting from publication of the article. Based on the reasoning in *York*, unless Plaintiffs can establish a separate harm from publication of the article, they were fully compensated for their compensatory damages because the Emporia Gazette paid Plaintiffs $120,000. Under the one recovery rule, Fosdick and Bachmurski are entitled to a dollar-for-dollar credit of the Emporia Gazette settlement for the republication only to the extent it compensates them for compensatory damages. The credit may not be applied against any punitive damages. Additionally, because there are two separate causes of action against Fosdick and Bachmurski, should the jury assess compensatory damages for the initial publication of the defamatory statements to the reporter, no credit from the settlement is to be applied to those compensatory damages.

Upon remand if the jury finds Fosdick and Bachmurski liable and determines the amount of compensatory damages owed, the defendants may argue double recovery and receive credit with respect to compensatory damages stemming from republication by the newspaper.

Punitive damages are separate and distinct from compensatory damages. Compensatory damages are designed to compensate the tort victim for actual damage or loss incurred by the action of the tortfeasor, whereas punitive damages are not compensatory, and if warranted, are given in addition to compensatory damages. " 'In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs.' " *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1007, 894 P.2d 260 (1995). However:

"The conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed. Where two separate causes of action are tried, arising from different factual situations and different theories, recovery of actual damages in one cause of action is insufficient to permit recovery of punitive damages in the second cause of action." *Traylor v. Wachter*, 227 Kan. 221, 224-25, 607 P.2d 1094 (1980).

If the jury awards actual or compensatory damages, that party may recover punitive damages, provided the plaintiff amended their pleadings to include a claim for punitive damages under K.S.A. 60-3703. See also *Iola State Bank v. Bolan*, 235 Kan. 175, 679 P.2d 720 (1984) (upholding $150,000 punitive damages award compared to $26,663.14 actual damages); *Sampson v. Hunt*, 233 Kan. 572, 665 P.2d 743 (1983) (upholding punitive damage award of $600,000 compared to $20,000 actual damages); *Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043 (1982) (upholding punitive damage award of $100,000 compared to $9,326.06 actual damages); and *Henderson v. Hassur*, 225 Kan. 678, 594 P.2d 650 (1979) (upholding punitive damage award of $215,000 compared to $48,000 actual damages).

*York* revisited the question as to whether a pro tanto credit should be granted against the amount of punitive damages awarded. 265 Kan. at 311. Our Supreme Court noted that the issue was resolved by their decision in *Smith v. Printup*, 254 Kan. 315, 356, 866 P.2d 985 (1993), where they said:

" 'The imposition of joint and several liability for punitive damages is contrary to the purpose for which punitive damages are awarded. Punitive damages are awarded to punish the wrongdoer. Each wrongdoer is liable to pay the punitive damages assessed against him or her. The amount of the award is to be calculated with the individual defendant's financial status and conduct in mind. K.S.A. 1992 Supp. 60-3701(b), (e) and (f). Joint and several liability undermines these considerations and therefore is unavailable. In contrast, joint and several liability for compensatory damages, under appropriate circumstances, is consistent with their purpose, which is to compensate the tort victim.' " *York*, 265 Kan. at 313-14.

Therefore, it is inappropriate to the purposes for which punitive damages are awarded to allow any portion of the $120,000 settlement payment made by the Emporia Gazette to be credited towards punitive damages. "A defendant is not entitled to apply a pro tanto credit to any amount awarded as punitive damages or to

apply a pro tanto credit of any amount previously recovered which was specifically allocated as punitive damages." 265 Kan. at 314. To make an allocation of any punitive damages to the $120,000 settlement would be contrary to the agreement that "denies that it [Emporia Gazette] is in any way liable to the Claimants for any of their claimed injuries or damages whatsoever and has refused payment for said claims."

Since the district court erred in concluding a joint tortfeasor relationship between Fosdick and Bachmurski and the effect of the release, summary judgment on Plaintiffs' other claims was also inappropriate.

Reversed and remanded with directions.