No. 128,438

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL SZERWINSKI,
*Appellant*,

v.

MAINSTREET ASSOCIATES, INC., d/b/a MINSKY'S PIZZA,
*Appellee*.

SYLLABUS BY THE COURT

1.

Under the doctrine of respondeat superior, an employer faces liability stemming from its employee's malfeasance. This type of negligence is also called vicarious liability or imputed negligence, where one party is held liable for the acts of another based on the relationship between the tortfeasor and the party held liable.

2.

The Kansas Supreme Court has long held that in an action for respondeat superior, the liability of the employer is limited by the claims available against the employee.

3.

Unlike a respondeat superior claim, the employer's liability in a negligent hiring or retention claim is not derivative of the employee's negligence but is based on the employer's direct negligent acts.

4.

Kansas applies the modified specific identity rule, in which a rebuttable presumption exists that a tortfeasor who is not named or otherwise specifically identified in a settlement or release document is not discharged from liability. This rule protects

1

both the plaintiff and tortfeasor from the perils of an inadvertent omission or careless drafting while also adhering to the parties' intent.

5.

The modified specific identify rule is a two-part test where, in the first step, the tortfeasor seeking to be discharged from liability must show that the written instrument identifies it by name or other specifically identifying terminology. If the written instrument does not name or otherwise identify the tortfeasor seeking to be discharged, it is presumed that the unnamed tortfeasor is not released from liability. In Kansas this is a rebuttable presumption. Therefore, in step two the unnamed tortfeasor can present extrinsic or parol evidence to establish that the parties to the written instrument intended to also discharge the unnamed party from liability.

6.

Under the modified specific identity rule, generic, general, or boilerplate language in a release is not sufficient to show that the parties intended to discharge the liability of an unnamed tortfeasor.

7.

When the party seeking to benefit from the discharge of liability in a written instrument is not named in that instrument, the presumption is that the parties did not intend to include the party in the discharge. Therefore, evidence other than the written instrument can rebut that presumption.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held January 6, 2026. Opinion filed April 17, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

2

*Jackson D. Wagner*, of Kreamer Arney Wait & Bottaro, L.C., of Overland Park, for appellee.

Before WARNER, C.J., HURST and BOLTON FLEMING, JJ.

HURST, J.: Michael Szerwinski, while riding a bicycle, was struck and injured by a car driven by an employee of Main Street Associates, Inc., d/b/a Minsky's Pizza (Minsky's). Szerwinski settled his claims with the employee pursuant to a settlement agreement in which Szerwinski released claims against the employee and others. Szerwinski later sued Minsky's under two negligence theories—respondeat superior and negligent hiring or retention. Asserting dated legal principles, Minsky's sought a judgment on the pleadings alleging that Szerwinski, through the settlement and release with the employee, had also released Minsky's from any potential liability. The district court granted Minsky's motion for judgment on the pleadings on both claims, and Szerwinski appeals.

While Szerwinski's settlement and release of liability with the employee prevents Szerwinski from asserting a respondeat superior claim against Minsky's, the release does not discharge Minsky's liability for the negligent hiring or retention claim. Contrary to the district court's decision, because Minsky's is not named or otherwise specifically identified in the release of liability, there is a presumption that the document does not discharge Minsky's liability. Minsky's failed to rebut that presumption. Therefore, Szerwinski's independent negligent hiring or retention claim should have survived Minsky's motion for judgment on the pleadings. The district court is affirmed, in part, and reversed, in part, and the case is remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2022, the driver of a car who was acting in the scope of his employment with Minsky's struck and injured Szerwinski. In exchange for a financial

payment, in July 2023, Szerwinski entered into a settlement agreement with the driver, the driver's spouse, and their insurer Allstate Insurance Company. The settlement agreement included a release of all claims (the Release) and this case relates to its terms, not the underlying facts of the accident or Szerwinski's injuries.

Pursuant to the Release, Szerwinski agreed to release liability for future claims against the driver (Minsky's employee), the driver's wife, and their personal insurer as follows:

"This Indentured Witnesseth that, in consideration of the sum . . . receipt whereof is hereby acknowledged, for myself and for my heirs, personal representatives and assigns, I do hereby release forever discharge [the driver and his spouse] with respect to claim #0688578327, against Allstate Insurance Company under policy #000000821589911, their heirs, executors and administrators, from the above-specified Allstate Claim, demands, damages, costs, expenses, loss of services, actions, and causes of actions arising from any act or occurrence, up to the present time, and particularly an account of all personal injury, disability, property damage, loss of services and loss or damages of any kind sustained or that I hereafter may sustain in consequence of an accident that occurred on or about the 24th day of September, 2022 at or near Lackman Rd. & 79th St.

. . . .

"I hereby agree that, as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident, casualty, or event, as well as to those now disclosed.

"I understand that the parties hereby released admit no liability of any sort by reason of said accident and that the said payments and settlement in compromise are made to terminate further controversy respecting all claims for damages that we have

4

heretofore asserted or that I or my personal representatives might hereafter assert because of said accident.

"I further understand that such liability as I, may or shall have incurred, directly or indirectly, in connection with or for damages arising out of the accident to each person or organization released and discharged of liability herein, and to any other person or organization, is expressly reserved to each of them, such liability not being waived, agreed upon, discharged nor settled by this release."

The Allstate Insurance Company policy referenced in the Release was the driver's personal automobile insurance policy—not Minsky's insurance policy.

On January 12, 2024, Szerwinski filed a petition against Minsky's, asserting claims of respondeat superior and negligent hiring or retention. Minsky's filed an answer asserting nine affirmative defenses.

Minsky's then filed a motion for judgment on the pleadings under K.S.A. 60-212(c), arguing that the Release prevented Szerwinski's claims. First, Minsky's claimed that because Szerwinski released the driver, Minsky's employee, from all claims arising out of the accident, Szerwinski also "effectively released" Minsky's from being held vicariously liable for the driver's conduct. Second, Minsky's argued that the Release's broad language also prevented Szerwinski's negligent hiring or retention claim because Minsky's and the driver were concurrent tortfeasors. According to Minsky's, the Release was just as effective to Minsky's as it was to the driver.

On August 30, 2024, the district court issued an order granting Minsky's motion for judgment on the pleadings. As to the respondeat superior claim, the district court cited law holding that the release of an agent also releases a principal that faces liability only vicariously through their agent. Regarding Szerwinski's negligent hiring or retention claim, the district court noted that a release with an agent does not necessarily release a

5

principal from the principal's direct liability. Instead, the court found the terms of the Release could be broad enough to include Minsky's if the terms "encompass[ed] all liability claims that [Szerwinski] could have asserted, even if [Minksy's] was not a party to the [R]elease."

The court ultimately found the language of the Release was broad enough to encompass Minsky's potential liability. The court emphasized the language from the Release that referenced all "'causes of action'" and "'all claims for damages'" when it concluded that the Release applied to "any causes of action relating back to the accident." The district court granted Minsky's motion on both claims, and Szerwinski now appeals.

## DISCUSSION

When a party has suffered damage allegedly caused by the negligence of another, as is the case here, the injured party often seeks damages against the alleged wrongdoers, also referred to as tortfeasors. Through that process, the injured party may seek to settle or resolve claims against one tortfeasor while maintaining claims against other tortfeasors. This resolution is accomplished through a written agreement that often includes a release or discharge of liability. One issue that can arise is whether that written instrument releases the plaintiff's liability against a particular tortfeasor. That is the heart of the dispute here— whether Szerwinski's settlement and release of liability with the driver encompassed in the Release also discharges Minsky's liability.

On appeal, Szerwinski contends the district court erroneously applied the law and thus incorrectly found the Release applied to discharge Minsky's liability related to the negligent hiring or retention claim. For clarity, in his reply brief, Szerwinski maintains he is not challenging the district court's decision to grant Minsky's motion for judgment on the pleadings as to the respondeat superior claim. In the interest of completeness, and because the initial brief is not entirely clear on that point, this court will briefly address

6

the respondeat superior claim. See *Schutt v. Foster*, 320 Kan. 852, 857, 572 P.3d 770 (2025) (discussing general rule that new issues may not be raised in reply briefs).

A motion for judgment on the pleadings under K.S.A. 60-212(c) asks the district court to find for the defendant based on the plaintiff's failure to state a cause of action. *Tillman v. Goodpasture*, 313 Kan. 278, 281, 485 P.3d 656 (2021). In considering the motion, the district court must accept the plaintiff's factual allegations as true, which permits the court to dispose of a matter early based on the application of the law to those admitted facts. 313 Kan. at 281. Thus, the primary consideration is whether the plaintiff has stated a legally cognizable claim. This court exercises unlimited review of a district court's decision to grant a motion for judgment on the pleadings. 313 Kan. at 281.

Before turning to the merits of Szerwinski's appeal, this court will address the parties' dispute regarding an apparent early draft of the Release that Szerwinski included with his opposition motion to Minsky's motion for judgment on the pleadings. There is nothing in the record showing that the district court considered this early draft in its decision, and this court will not use the draft in its review.

## I. THE DISTRICT COURT PROPERLY DISMISSED SZERWINSKI'S RESPONDEAT SUPERIOR CLAIM

Under the doctrine of respondeat superior, an employer faces liability stemming from its employee's malfeasance. This type of negligence is also called vicarious liability or imputed negligence, where one party is held liable for the acts of another based on the relationship between the tortfeasor and the party held liable. See, e.g., *Stroud v. Ozark Nat'l Life Ins. Co.*, 320 Kan. 180, 210, 564 P.3d 725 (2025). In this case, under the respondeat superior claim, the employer's liability does not stem from its direct conduct but is imputed from its employee's conduct. *McGuire v. Sifers*, 235 Kan. 368, 378, 681 P.2d 1025 (1984). To pursue a claim against an employer under a theory of respondeat

superior, the employee must have been acting within the scope of their employment at the time the employee caused the injury. 235 Kan. at 378. Accepting the allegations in the petition as true, the driver was a Minsky's employee and was acting in the scope of his employment when the accident occurred. Those facts establish a basis for a respondeat superior negligence claim against Minsky's.

The Kansas Supreme Court has long held that in an action for respondeat superior, the liability of the employer is limited by the claims available against the employee. See *Jacobson v. Parrill*, 186 Kan. 467, 472-73, 351 P.2d 194 (1960); see also *Stroud*, 320 Kan. at 210 (granting summary judgment on vicarious liability claim when summary judgment was appropriate for the claims of the agent). A judgment against the agent "establishes the full limit of liability against" the principal, who is "only derivatively liable as under the doctrine of respondeat superior." *Jacobson*, 186 Kan. at 474. Therefore, Kansas courts have long ruled that "the satisfaction of such a judgment extinguishes any right of action for derivative liability." 186 Kan. at 474-75. See also *York v. InTrust Bank, N.A.*, 265 Kan. 271, Syl. ¶ 3, 962 P.2d 405 (1998) ("A release or covenant not to sue an agent also releases a principal who is purely vicariously liable for imputed negligence under a theory of respondeat superior."). That is, satisfaction of claims against the employee forecloses a respondeat superior claim against the employer.

It is undisputed that, in exchange for payment, Szerwinski released the driver (Minsky's employee) and the driver's personal insurer from Szerwinski asserting any future claims related to the accident. This means Minsky's liability under respondeat superior was absolved. By operation of law, if Szerwinski could no longer assert negligence claims against the employee there could be no imputed negligence against Minsky's because there was no negligence to impute. However, the specific identity rule, discussed below, does not apply to whether an employer's respondeat superior liability is extinguished based on a plaintiff's settlement with the employee. See *Cobb v. Corbett*, 32 Kan. App. 2d 1184, 1191, 95 P.3d 1028 (2004) (finding specific identity rule did not

8

apply in respondeat superior context). Therefore, to the extent the district court relied on this rule to analyze Szerwinski's respondeat superior claim, that analysis was done in error. The district court properly dismissed Szerwinski's respondeat superior claim.

## II. THE DISTRICT COURT ERRED IN GRANTING MINSKY'S MOTION AS TO SZERWINSKI'S CLAIM OF INDEPENDENT NEGLIGENCE

Unlike a respondeat superior claim, the employer's liability in a negligent hiring or retention claim is not derivative of the employee's negligence but is based on the employer's direct negligent acts. Liability in a negligent hiring or retention claim "runs directly from the employer to the person injured" and is distinct from the employee's negligence. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 334, 961 P.2d 1213 (1998); see also *Atkinson v. Wichita Clinic, P.A.*, 243 Kan. 705, 710, 763 P.2d 1085 (1988) (distinguishing liability that is derivative versus direct). Here, the district court determined that the Release, which only named the employee and his insurer, also acted to discharge Minsky's liability from Szerwinski's direct negligence claims based on the breadth of the claims released. In this appeal, Minsky's continues to argue the language of the Release supports the district court's decision. For reasons explained below, this court disagrees.

*A Historical Look at Releasing Liability of Unnamed Tortfeasors*

To understand Minsky's argument and what occurred here, it helps to review the history of liability in multi-tortfeasor negligence actions. Before 1974, Kansas applied a doctrine of contributory negligence and principles of joint and several liability between joint tortfeasors. *Luther v. Danner*, 268 Kan. 343, 346-49, 995 P.2d 865 (2000). This meant that when more than one tortfeasor caused the plaintiff's injury, each tortfeasor was jointly and severally liable for the entire damage. See *Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 609, 347 P.2d 394 (1959). Under those circumstances, a

9

general release of liability was often understood to release all tortfeasors unless the language reserved claims against specific tortfeasors. See *Sade v. Hemstrom*, 205 Kan. 514, 523, 471 P.2d 340 (1970) (ruling a release extinguished liability for multiple tortfeasors when only one tortfeasor was named and there was no express reservation of rights); *Railway Co. v. McWherter*, 59 Kan. 345, 352, 53 P. 135 (1898) ("acceptance of satisfaction from one of two or more joint tort feasors [] discharge[s] as to all"); *Stueve v. American Honda Motors Co.*, 457 F. Supp. 740, 746-47 (D. Kan. 1978) (citing to Kansas cases from 1908 and 1927 where the Kansas Supreme Court ruled general release language without a reservation of the right to sue extinguished liability against all wrongdoers).

When applying these concepts, courts often distinguished between successive and concurrent tortfeasors. See *Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 39-41, 510 P.2d 145 (1973), *disapproved of on other grounds by Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 228 P.3d 1048 (2010). Concurrent tortfeasors were those "whose tortious acts are concurrent and result in a single injury," but a successive tortfeasor was an independent tortfeasor whose actions caused injury distinct from the other tortfeasors. *Fieser*, 212 Kan. at 39. Under traditional theories of joint and several liability, the court would conclude that a general release would not automatically apply to release a successive tortfeasor from liability. See, e.g., 212 Kan. at 41 (finding a general release does not automatically release a successive tortfeasor and declining to consider whether it would release concurrent tortfeasors); *Milwaukee Ins. Co.*, 185 Kan. at 609 ("In cases of such independent concurring or successive torts, the release of one wrongdoer does not release the other."); *Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 20, 309 P.2d 692 (1957) (same).

After Kansas adopted the comparative fault negligence standard in 1974, these historic "common-law principles of joint liability" were eliminated. *Stueve*, 457 F. Supp. at 748; see *Brown v. Keill*, 224 Kan. 195, 204, 580 P.2d 867 (1978) ("[T]he concept of

joint and several liability between joint tort-feasors previously existing in this state no longer applies in comparative negligence actions."); see also K.S.A. 60-258a. In recognition of the Legislature's newly adopted comparative fault standards, by the late 1970s federal courts theorized that under Kansas law, if a release was silent as to one tortfeasor, or the plaintiff's claims against that tortfeasor, then the unnamed tortfeasor was not presumed to be released. *Stueve*, 457 F. Supp. at 746-47.

Under comparative negligence standards, the unnamed tortfeasor bore the burden of showing that a settlement between a plaintiff and another tortfeasor intended to release the unnamed tortfeasor. *Shinkle v. Union City Body Co.*, 94 F.R.D. 631, 633 (D. Kan. 1982). This represented a distinct shift in the law. See, e.g., *Geier v. Wikel*, 4 Kan. App. 2d 188, 189-90, 603 P.2d 1028 (1979) (noting that adoption of comparative fault "shattered" the reasoning of earlier rules applying a general release to unnamed tortfeasors). Additionally, now intervening and superseding causes of damage are only recognized in extraordinary cases. *Puckett*, 290 Kan. 406, Syl. ¶ 11. The purpose of the change was to award damages based on the comparative fault of the tortfeasors and to eliminate contributory negligence as a bar to the plaintiff's recovery. *Brown*, 224 Kan. at 197.

The Kansas Supreme Court confirmed this evolution in 2000 when it found a general release did not extinguish the plaintiff's claims against unnamed tortfeasors. *Luther*, 268 Kan. at 352. In *Luther*, a father and son were in an accident with Danner, who was driving a truck as part of his employment with Service Printing, Inc. The minor son was injured and the father died. The mother/wife of the victims entered a small settlement with the insurer for the son's personal injury claim against his father's estate. She later filed wrongful death claims against Danner and Service Printing related to her husband's death. The district court found the settlement release agreement for the son's personal injury claims "foreclosed any other claims against Danner and Service Printing." 268 Kan. at 343. On review, a panel of this court applied the traditional rules of contract

interpretation and concluded the district court did not err because the release was "'plain, unambiguous, and binding as to all tortfeasors.'" 268 Kan. at 345.

The pertinent release language identified the releasees as husband's estate, Dairyland Insurance Company, and "'all other persons, firms, corporations, associations, or partnerships'" and provided:

> "'The undersigned have read the foregoing release and fully understand it and know that it is intended to be, and is, a complete bar to any future claim or action of any kind on account of any injuries or damages, whether known or unknown at this time, caused or resulting from the occurrence mentioned above.'" 268 Kan. at 344.

On its review, the Kansas Supreme Court considered whether the general release extinguished the wife's claims against the defendants. 268 Kan. at 344. The court discussed Kansas' move to the "institution of comparative negligence concepts," which softened the "'all or nothing'" outcomes under the prior scheme. 268 Kan. at 346. The *Luther* court then noted "that in the construction of general releases, too, the 'all or nothing' rule has given way to more tempered approaches," which included the "'flat bar rule,' 'intent rule,' and 'specific identity rule' cases." 268 Kan. at 346.

The *Luther* court, citing to an analysis from the New Mexico Supreme Court, adopted the specific identity rule, which presumes that "'the liability of a party not named or otherwise specifically identified by the terms of the release is not discharged.'" *Luther*, 268 Kan. at 347 (quoting *Hansen v. Ford Motor Co.*, 120 N.M. 203, 207, 900 P.2d 952 [1995]). This rule "'compels the settling parties either to name nonsettling tortfeasors . . . or to include such terms or descriptions as make the identity of the unnamed beneficiaries or the class thereof reasonably apparent.'" 268 Kan. at 347. The *Luther* court explained that the specific identity rule as adopted "affords protection to the settling party by creating a presumption against wholesale discharge and affords protection to the nonsettling tortfeasors by making it rebuttable." 268 Kan. at 351-52.

12

*The Modified Specific Identity Rule*

Here, both parties agree that the specific identity rule applies but disagree about the outcome, which hinges on an interpretation of the Release. On appeal, this court exercises unlimited review to determine the meaning of a written instrument. *Marquis*, 265 Kan. at 324. Generally, when interpreting written instruments, the court's primary role is to determine the parties' intent. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). In conducting that review, this court must consider the instrument as a whole and cannot read the terms or passages in isolation. 296 Kan. at 963. This court will only find an agreement ambiguous "if it contains provisions or language of doubtful or conflicting meaning" from the natural and reasonable reading of its terms. *Marquis*, 265 Kan. at 324.

Courts adopting the traditional specific identity rule "conclusively presume that the liability of a party not named or otherwise specifically identified by the terms of the release is not discharged." *Hansen*, 120 N.M. at 207. Rather than make the presumption conclusive, New Mexico adopted a variation that made the presumption rebuttable. 120 N.M. at 211. The *Hansen* court reasoned that the "pure specific identity rule entirely ignores the actual intent of the parties to a general release." 120 N.M. at 211. Accordingly, the court found that "sound policy requires more evidence of intent to release potential tortfeasors not named in a release agreement than boilerplate language that objectively purports to release the entire world from liability." 120 N.M. at 211. Noting its agreement with the New Mexico court's decision in *Hansen*, the *Luther* court also adopted the variation of the specific identity rule creating a rebuttable presumption against the release of an unnamed tortfeasor's liability. 268 Kan. at 349, 351-52. See also *Stueve*, 457 F. Supp. at 747 ("[I]n the absence of any evidence produced by either party on the question of intent, and when the document is silent upon the matter, the Kansas rule is that other parties are 'presumed' not released.").

13

As explained in *Luther*, Kansas applies the modified specific identity rule, in which a rebuttable presumption exists that a tortfeasor who is not named or otherwise specifically identified in a settlement or release document is not discharged from liability. The modified specific identify rule is a two-part test where, in the first step, the tortfeasor seeking to be discharged from liability must show that the written instrument identifies it by name or other specifically identifying terminology. *Luther*, 268 Kan. at 352; *Hansen*, 120 N.M. at 207. If the written instrument does not name or otherwise identify the tortfeasor seeking to be discharged, it is presumed that the unnamed tortfeasor is not released from liability. In Kansas this is a rebuttable presumption. Therefore, in step two the unnamed tortfeasor can present extrinsic or parol evidence to establish that the parties to the written instrument intended to also discharge the unnamed party from liability. See *Luther*, 268 Kan. at 349 (quoting *Hansen*, 120 N.M. at 211). This modified specific identity rule protects the plaintiff from inadvertently releasing the unnamed tortfeasors but also allows an unnamed tortfeasor to show an intent that it be released from liability. See, e.g., *McKissick v. Yuen*, 618 F.3d 1177, 1193 (10th Cir. 2010) ("The specific identity rule is designed to prevent the release of all potential tortfeasors upon the release of one by means of boilerplate, 'generalized broad language which, in essence, . . . purports to release the entire world from any and all claims.'"). Essentially, this rule protects both the plaintiff and tortfeasor from the perils of an inadvertent omission or careless drafting while also adhering to the parties' intent.

*Step One: Minsky's is not named or otherwise specifically identified in the Release.*

In step one of the modified specific identity rule, this court must determine whether the Release names or otherwise specifically identifies Minsky's as a released tortfeasor. Minsky's admits it is not named in the Release but maintains "other specific identifying terminology in the Release . . . was sufficient to identify Minsky's." Minsky's focuses on the language releasing the driver's "heirs, executors and administrators" and reference to any claims arising from the accident. Minsky's argues that the Release

14

applies to "any controversy for all claims that the plaintiff had previously asserted or which he could assert in the future due to the September 24, 2022, accident," which it argues would include any claims against Minsky's.

The district court—in disregard for the tenets of the modified specific identity rule—found the language in the Release was "broad enough to cover Minsky's." The court focused on the following Release language to support its decision:

> "[C]auses of actions arising from any act or occurrence, up to the present time, and particularly an account of all personal injury, disability, property damage, loss of services and loss or damages of any kind sustained or that I hereafter may sustain in consequence of [the] accident . . . .

>     . . . .

> ". . . [S]aid payments and settlements in compromise are made to terminate further controversy respecting all claims for damages that we have heretofore asserted or that I or my personal representatives might hereafter assert because of said accident."

In support of its argument, Minsky's relies on an unpublished case—decided before the *Luther* decision—in which the plaintiff, a passenger involved in a car accident, entered a release with the driver of the car and the driver's insurance companies. *White v. Miller*, No. 66,734, unpublished opinion filed March 13, 1992 (Kan. App.). The release in *White* provided that:

> "'For the sole consideration of Six Thousand and no/100 dollars . . . the undersigned hereby releases and forever discharges Nina Collins, Ranger Ins. Co. and Seneca Ins. Co. and *all other persons, firms and corporations from all claims and demands*, rights and causes of action of any kind the undersigned now has or hereafter may have on account of or in any way growing out of Personal Injuries known or unknown to me at the present

time . . . resulting or to result from an occurrence which happened on or about July 2, 1988.'" (Emphasis added.) *White*, slip op. at 2.

The district court found the release was broad enough to apply to all third-party defendants, not just the parties to the agreement. On review, a panel of this court likened the case to another case with similar release language and affirmed the district court's dismissal. *White*, slip op. at 2-4, 9-11 (citing *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 [1980]).

The releases in both cases relied on by Minsky's contained language that released claims against a specific party "*and all other persons, firms and corporations*." While the district court here agreed that the language in the *White* release was broader than the Release here, it still concluded the Release covered "all 'causes of action'" and "'all claims for damages'" that Szerwinski might assert against Minsky's related to the accident. Not only did the releases in *White* and *Kennedy* include more entities ("all other persons, firms and corporations") than the Release here, those cases were also decided before *Luther* and thus apply a legal principle inapplicable to the current negligence standards. See, e.g., *White*, slip op. at 3-8 (no discussion of specific identity rule).

The Release here states that Szerwinski releases and discharges the Minsky's driver and his spouse, including "their heirs, executors and administrators," with respect to a claim submitted to Allstate Insurance Company under the driver's personal insurance policy:

> "I do hereby release forever discharge [the driver and his spouse] with respect to claim #0688578327, against Allstate Insurance Company under policy #000000821589911, their heirs, executors and administrators, from the above-specified Allstate Claim, demands, damages, costs, expense, loss of services, actions, and causes of actions arising from any act or occurrence, up to the present time, and particularly an account of all personal injury, disability, property damage, loss of services and loss of damages of any

16

kind sustained or that I hereafter may sustain in consequence of an accident that occurred on or about the 24th day of September, 2022 at or near Lackman Rd. & 79th St."

The Release discharges the liability of the driver, the driver's spouse, and their insurance policy under which Szerwinski made a claim and identifies no other tortfeasors. Nothing in this language names or relates to Minsky's with specifically identifying terminology. Additionally, Minsky's role in the litigation or potential liability is not identified using specific terminology. For example, the Release does not refer to the driver's employer or to Minsky's insurance policy. Moreover, when referencing the liability discharged, the Release refers to "the parties hereby released," again showing the discharge applies only to those parties identified in the Release. The breadth of this language does not name or otherwise specifically identify Minsky's as a released party.

Under the modified specific identity rule—which unquestionably applies here—Minsky's is not included as a released party. Therefore, under step one, it is presumed that the Release does not discharge Minsky's from liability. Therefore, this court must move to step two of the modified specific identity rule which allows the party seeking discharge to rebut the presumption through extrinsic evidence.

*Step Two: Rebutting the presumption against discharge*

In step two, Minsky's can rebut the presumption that the Release did not discharge its liability through extrinsic evidence that demonstrates the parties intended to discharge Minsky's liability. Just as step one protects against the inadvertent effects of a poorly drafted written instrument, so does step two. Allowing the unnamed tortfeasor seeking to be discharged from liability to rebut the presumption against discharge ensures that the parties' intent can still be accomplished even if the written instrument lacks clarity and specificity. This process combines legal principles requiring parties to make their writings clear with the long-standing Kansas policy to interpret written instruments

consistent with the parties' intent. See *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002) ("The primary rule in interpreting written contracts is to ascertain the intent of the parties."). An unnamed party should not be subject to further liability simply because its exact name or identity was not included in a written instrument when the parties intended its release.

Rather than present extrinsic evidence to rebut this presumption—likely because extrinsic evidence does not support its position—Minsky's merely argues that the breadth of the Release shows an intent to include Minsky's as a released party. Minsky's seeks to limit this court's review to the four corners of the Release and argues this court should not consider extrinsic/parol evidence unless the parties' intent is not clear. In limiting the evidence available to show the parties' intent, Minsky's misunderstands or perhaps ignores the specific identity rule and the rebuttable presumption standard, but reverts to the antiquated common-law rule, which is inapplicable here. See *Luther*, 268 Kan. at 349.

In Kansas, when a party enters into a settlement agreement with some, but not all, of the tortfeasors, there is a "presumption against wholesale discharge" of all tortfeasors through that settlement. *Luther*, 268 Kan. at 351-52. Therefore, under the modified specific identity rule, generic, general, or boilerplate language in a release is not sufficient to show that the parties intended to discharge the liability of an unnamed tortfeasor. The entire point of adopting the specific identity rule was to reduce the risk of unintentionally releasing a tortfeasor through general, boilerplate language. *McKissick*, 618 F.3d at 1193. While courts typically determine the parties' intent without straying outside the four corners of the document, to reach step two of the modified specific identity rule a court must have already concluded that the written instrument does not sufficiently demonstrate an intent to discharge the unnamed tortfeasor. Therefore, evidence other than the written instrument must be used to rebut that presumption. *Luther*, 268 Kan. at 349.

18

In step two, the unnamed tortfeasor carries the burden to rebut the presumption that the writing did not discharge its liability. *Luther*, 268 Kan. at 352. Following *Luther*, few Kansas cases have addressed the specific identity rule, and there has been little explanation of what evidence could rebut the presumption against discharge of liability. See, e.g., *Wright v. Bachmurski*, 29 Kan. App. 2d 595, 604, 29 P.3d 979 (2001) (found that two men were not included in the general release and explained that "the burden of pleading and proving that the settlement releases the individual is on the party claiming release"). In New Mexico, the *Hansen* court explained that an unnamed tortfeasor "seeking to be discharged must prove by *extrinsic evidence* that the parties to the agreement actually intended to discharge [them] from liability." (Emphasis added.) 120 N.M. at 211.

A more recent New Mexico case provides some insight into the type of extrinsic evidence that a court might consider. See *Leslie v. BNSF Railway Co.*, No. 1:16-CV-1208-JCH-JHR, 2019 WL 3082494 (D.N.M. 2019) (unpublished opinion). In *Leslie*, plaintiffs were injured when their car struck a cow owned by Huning that the defendants argued got into the road by jumping over a barrier owned and maintained by BNSF Railway. Plaintiffs then filed separate claims against BNSF. The plaintiffs executed a settlement with the Huning defendants, with no mention of BNSF, but it said, "'This settlement shall resolve all claims, pled or unpled, between all named or potential parties to the litigation . . . .'" 2019 WL 3082494, at *1-2.

BNSF moved for summary judgment arguing the settlement agreement language that included "'all named or potential parties to the litigation'" also released and discharged BNSF. 2019 WL 3082494, at *3. The court disagreed, finding BNSF was not named and, thus, BNSF had the burden to prove by extrinsic evidence that the parties intended to also release BNSF. To meet its burden, BNSF provided extrinsic evidence of its letter to Huning describing its rights to indemnification. BNSF argued the timing of the indemnification letter indicates the "'all named or potential parties to the litigation'"

19

language shows plaintiffs intended to also release BNSF. 2019 WL 3082494, at *3. The court again disagreed because the parties knew at the time that BNSF was included in the litigation and thus its absence from the list of released parties demonstrates intent to not include BNSF. The court also found other evidence supported its finding: BNSF was not present at the settlement discussions, provided no compensation to plaintiffs, and Huning disputed BNSF's claim of indemnity and blamed the accident on BNSF's negligence. 2019 WL 3082494, at *4. On appeal, the United States District Court for the District of New Mexico affirmed the denial of summary judgment for BNSF. 2019 WL 3082494, at *5.

Minsky's fails to present extrinsic evidence to rebut the presumption that, as an unnamed tortfeasor, the Release did not discharge its liability. For example, Minsky's does not argue that it was included in the settlement discussion that resulted in the parties' settlement and agreement to enter the Release. Minsky's does not argue that it made a financial contribution in exchange for the plaintiff agreeing to the Release. Minsky's does not allege that it or any of its insurers has contributed financially in any way to Szerwinski. While evidence of this type may not be dispositive, it is difficult to imagine a plaintiff intending to discharge a party from liability who was not involved in the settlement negotiations and who made no financial (or other) contribution to the plaintiff.

Apparently recognizing the shortcomings of its argument under the modified specific identity rule, Minsky's asserts alternative legal theories to support its claim. In one theory, Minsky's attempts to convince this court to disregard the specific identity rule and instead apply the intent rule. Yet, this is merely a different route to the same result. Under the intent rule, the court's goal is to discern the intent of the parties to the written release or settlement agreement, with some courts permitting extrinsic/parol evidence and some not. *Luther*, 268 Kan. at 347. Once again Minsky's asks this court to ignore any extrinsic/parol evidence, but Minsky's incorrectly believes that the Release alone demonstrates the parties' intent in its favor. Finally, Minsky's also resurrects the

20

distinction between concurrent and successive tortfeasors to claim the Release discharges its liability. These arguments rely on dated theories of liability and thus fail. See *Brown*, 224 Kan. at 204 ("the concept of joint and several liability between joint tort-feasors previously existing in this state no longer applies in comparative negligence actions"); *Stueve*, 457 F. Supp. at 748 (same).

Kansas has moved away from the old theories that a general, broad, boilerplate release operates to discharge all claims against all potential tortfeasors. *Luther*, 268 Kan. at 351-52. Minsky's was not named or otherwise specifically identified in the Release and thus it is presumed that the Release does not discharge Minsky's liability. Minsky's had the opportunity and carried the burden to rebut the presumption—and it failed to meet that burden. The general, broad language in the Release does not demonstrate an intent to discharge Minsky's liability, and the district court erred in finding that the Release discharged Minsky's from direct liability for Szerwinski's negligent hiring or retention claim.

CONCLUSION

After being injured by a Minsky's employee in a car versus bicycle accident, Szerwinski settled claims it could have asserted against the Minsky's employee and the employee's personal insurer through the Release. That action also foreclosed Szerwinski's respondeat superior claim against Minsky's. However, the Release does not name or otherwise specifically identify Minsky's as a discharged party. Therefore, under the modified specific identity rule, there is a rebuttable presumption that the Release did not discharge Minsky's direct liability. Minsky's failed to introduce evidence to rebut that presumption, and the district court erred in granting Minsky's motion for judgment on the pleadings as to Szerwinski's negligent hiring or retention claim.

Affirmed in part, reversed in part, and remanded with directions.